**Gerald D. COHEN, Harold C. Garnick and Richard B. Cohen, Individually and as Trustees of CGI Properties Ltd. II Realty Trust, Plaintiffs,**

v.

**LEHMAN BROTHERS BANK, FSB, Defendant.**

**No. 02 Civ. 1577(LAP).**

United States District Court, S.D. New York.

July 29, 2003.

cative because the defendant sought dismissal of both the breach of contract and breach of the covenant claim.

Howard W. Burns, Jr., New York City, for Plaintiffs.

Brian F. McDonough, Drinker, Biddle & Reath, LLP, New York City, for Defendant.

## MEMORANDUM AND ORDER

PRESKA, District Judge.

This action arises out of a failed mortgage loan transaction undertaken in connection with an attempt by plaintiff CGI Properties Ltd. II Realty Trust ("CGI") to acquire certain property in Bloomsburg, Pennsylvania. Individual plaintiffs Gerald D. Cohen, Harold C. Garnick and Richard B. Cohen are the trustees and beneficiaries of plaintiff CGI (collectively, "plaintiffs"). When the financing arrangement did not come to fruition, plaintiffs commenced suit against the proposed lender, defendant Lehman Brothers Bank, FSB ("Lehman"), claiming breach of contract and promissory estoppel.

Plaintiffs' claims are based on a document titled "Lehman Brothers CTL Program Application/Commitment Letter" (the "Application"). Plaintiffs argue that the Application constitutes a contract which Lehman breached when it terminated the loan transaction. Alternatively, plaintiffs argue that the Application constitutes a preliminary binding agreement which Lehman breached by failing to negotiate in good faith to consummate the loan transaction. Plaintiffs also claim that Lehman breached its implied obligation of good faith and fair dealing under the preliminary binding agreement. Finally, plaintiffs contend that Lehman should be held liable for reliance damages under the theory of promissory estoppel.

Defendant argues that the parties did not enter into any agreement—preliminary or otherwise—because the Application was not a binding contract. Alternatively, defendant contends that plaintiffs' first three claims based on breach of contract are barred by the Statute of Frauds because there is no writing subscribed by Lehman agreeing to make a mortgage loan to plaintiffs. With respect to plaintiffs' promissory estoppel claim, defendant argues that

plaintiffs cannot demonstrate either that defendant made a clear and unambiguous promise or that any reliance by plaintiffs was reasonable. Lehman now moves for summary judgment on all of plaintiffs' claims. In the alternative, Lehman moves to strike plaintiffs' jury demand.

## BACKGROUND

### I. Timeline of the Transaction

The following facts are taken from the parties' Rule 56.1 Statements and are undisputed. In the late fall of 1999, CGI became interested in purchasing certain commercial real property in Bloomsburg, Pennsylvania, as part of a tax-free exchange of property under Internal Revenue Code § 1031. As part of this endeavor, in late 1999 or early 2000, CGI retained the services of Casimir Groblewski of Spectrum Financial Corporation to serve as a mortgage broker in securing a mortgage loan. Groblewski solicited quotes on CGI's behalf from a number of lenders, including Lehman, and on February 15, 2000, Groblewski advised Gerald Cohen by email of his communications. He summarized the proposals of three possible lenders and concluded that "Lehman is the best bet," with which Gerald Cohen agreed.

On or about March 6, 2000, Lehman provided CGI with a document with the heading "Lehman Brothers CTL Program Application/Commitment Letter." (Ex. H to the Affidavit of Kathleen A. Donohue ("Donohue Aff.")). On March 29, 2000, the marked-up document was returned to Lehman. On April 10, 2000, Gerald Cohen overnighted to Charles Manna at Lehman an "executed Application for the [Bloomsburg] property as well as a [deposit] check for $30,000." (Ex. J to Donohue Aff.). The executed Application was dated April 6, 2000 and was signed by Gerald Cohen, Harold Garnick and Richard Cohen, as trustees of CGI. (Ex. K to Donohue Aff.).

The loan transaction was never consummated. On May 15, 2000, Manna forwarded Gerald Cohen a letter written by Kenneth Cohen at Lehman, which stated, "We have notified you that we will be unable to issue a Commitment and you have requested us to return to you any unexpended deposit . . . ." (Ex. S to Donohue Aff.). Lehman subsequently refunded $20,112.50 of the deposit made by CGI.

### II. The Application

The Application, dated April 6, 2000, (Ex. K to Donohue Aff.), contains several provisions which are relevant to this Court's consideration of defendant's motion. Much quoted by both parties is Section B of the Application, titled "Commitment," which provides in pertinent part:

> The consummation of the Loan transaction is conditioned upon the issuance by Lender [Lehman] of a mortgage loan commitment substantially in the form annexed hereto as Schedule 3 (the "Commitment") confirming its agreement to make the Loan upon, and subject to, the terms and conditions set forth in this Application.

(Ex. K at 1). Section C of the Application provides:

> In addition to the issuance and acceptance of a Commitment, the closing of the Loan shall be conditioned upon (a) the completion by Lender and Lender's Counsel (hereinafter defined) of such due diligence investigations with respect to Borrower, its principals and the Property as Lender and Lenders Counsel shall deem appropriate . . . .

(*Id.* at 2). Section I of the Application, which discusses termination, provides that "Lender may, at any time prior to the issuance of a Commitment and at its sole discretion, decline to proceed further with respect to a financing of the Property."

(*Id.* at 6). The Application also contains the following paragraph:

> THIS APPLICATION IS NOT A COMMITMENT BY LENDER TO LEND (ON EITHER AN EXPRESS OR IMPLIED BASIS) AND DOES NOT IMPOSE ANY OBLIGATIONS ON LENDER. LENDER SHALL ONLY COMMIT TO MAKE A LOAN WITH RESPECT TO THE PROPERTY PURSUANT TO A COMMITMENT SUBSTANTIALLY IN THE FORM ANNEXED HERETO AS SCHEDULE 3 (WITH SUCH MODIFICATIONS OR SUPPLEMENTS AS LENDER SHALL DEEM APPROPRIATE) WHICH HAS BEEN SIGNED BY LENDER AND COUNTERSIGNED BY BORROWER AND DELIVERED TO LENDER TOGETHER WITH ANY REQUIRED PAYMENTS WITHIN THE TIME PERIOD REQUIRED HEREBY.

(*Id.* at 9).

## DISCUSSION

### I.  Summary Judgment Standard

Under Rule 56, summary judgment shall be rendered if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law determines the facts which are material to the outcome of a particular litigation. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Only when it is apparent, however, that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994).

### II.  Breach of Contract

The primary issue presented on this motion is what level of commitment, if any, arose from the Application.[1] "Ordinarily when the parties contemplate further ne-

---

1.  The parties agree that New York law applies in this diversity action.

gotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract." *Adjustrite Sys., Inc. v. GAB Business Servs., Inc.,* 145 F.3d 543, 548 (2d Cir.1998). This stems from the "elemental principle of contract law that no contract can be formed unless the parties intend to be bound." *Ogden Martin Sys. v. Tri–Continental Leasing Corp.,* 734 F.Supp. 1057, 1066 (S.D.N.Y.1990); *see R.G. Group, Inc. v. Horn and Hardart Co.,* 751 F.2d 69, 74 (2d Cir.1984) ("if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs"). Thus, when parties "fail to execute a more formal agreement, the issue arises as to whether the preliminary agreement is a binding contract or an unenforceable agreement to agree." *Adjustrite,* 145 F.3d at 548.

The Court of Appeals has explicitly endorsed the framework developed by then-District Judge Leval in *Teachers Insurance & Annuity Association v. Tribune Co.,* 670 F.Supp. 491 (S.D.N.Y.1987), for analyzing the nature of a preliminary agreement and the obligations of the parties thereunder. *See Adjustrite,* 145 F.3d at 547–48; *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 71–72 (2d Cir.1989). This framework categorizes binding preliminary agreements into one of two types. *Id.* The first is a "fully binding preliminary agreement," which is fully binding; the second is a "binding preliminary commitment," which is binding only to a certain degree. *Id.*

Hence, if a preliminary agreement is of the first type, the parties are fully bound to carry out the terms of the agreement even if the formal instrument is never executed. If a preliminary agreement is of the second type, the parties are bound only to make a good faith effort to negotiate and agree upon the open terms and a final agreement; if they fail to reach such a final agreement after making a

good faith effort to do so, there is no further obligation. Finally, however, if the preliminary writing was not intended to be binding on the parties at all, the writing is a mere proposal, and neither party has an obligation to negotiate further.

*Id.*

"The key, of course, is the intent of the parties: whether the parties intended to be bound, and if so, to what extent." *Id.* "Generally, courts look solely at objective signs of intent, and do not consider subjective evidence of intent." *Phansalkar v. Andersen Weinroth & Co.,* No. 00 Civ. 7872, 2001 WL 1524479, at *25 (S.D.N.Y. Nov.29, 2001). To determine whether the parties intended to be bound, a court must consider the following factors:

(1) whether there has been an express reservation of the right not to be bound in the absence of a final writing; (2) whether there has been partial performance of the alleged contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to a final writing.

*Id.* The first factor, the language of the agreement, is "the most important." *Arcadian,* 884 F.2d at 72. Indeed, if the language of the agreement is clear that the parties did not intend to be bound, the Court need look no further. *See, e.g., id.* (finding that there was no binding agreement because "the language of the November memorandum—two references to the possibility that negotiations might fail and the reference to a binding sales agreement to be completed at some future date— shows that [defendant] did not intend to be bound"); *Cohen v. Singer,* 4 Fed.Appx. 38, 39 (2d Cir.2001) (finding no binding agreement based solely on the first factor).

■ Here, plaintiffs claim that the Application constitutes "a contract whereby Lehman Brothers Bank agreed to loan a certain sum of money" to plaintiffs and that "by refusing to lend the funds to [plaintiffs] as agreed, Lehman Brothers Bank repudiated and breached [that] contract." (Complaint ¶¶ 40, 41, Ex. A to Donohue Aff.). However, plaintiffs fail to address how this claim can survive summary judgment in light of the language of the Application itself. The Application states clearly and unequivocally that it is not a commitment to lend and that it "does not impose any obligations on Lender [Lehman]." Moreover, the Application explicitly references the Schedule 3 Commitment that had to be issued before the loan transaction could be consummated, contemplates the possibility that a Commitment might never be issued by Lehman and conditions the issuance of a Commitment on Lehman's execution of certain due diligence. Thus, the Application is "incapable of enforcement as a contract inasmuch as [it is] devoid of any indication that the parties intended [it] to form a binding obligation." *Ogden Martin*, 734 F.Supp. at 1068. As the Court of Appeals noted in affirming the district court's grant of summary judgment to defendant on plaintiff's breach of contract claims in *Arcadian Phosphates, Inc. v. Arcadian Corp.*, "[i]n order to prevail ..., [defendant] needed to show only that [plaintiff] should have known that [defendant] did not intend to be bound before the [final] contract was signed." 884 F.2d at 73 (citation and internal quotation marks omitted) (final alteration in original). Here, the language of the Application demonstrates just that: plaintiffs should not have believed that defendant intended to be bound. *See id.* Accordingly, summary judgment in favor

of defendant is granted on plaintiffs' breach of contract claims.[2]

### III. Promissory Estoppel

■ In addition to their breach of contract claims, plaintiffs seek damages based on the theory of promissory estoppel. In order to state a claim for promissory estoppel under New York law, a plaintiff must demonstrate three elements: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) injury sustained by the party asserting the estoppel by reason of his reliance. *See Cyberchron Corp. v. Calldata Sys. Dev.*, 47 F.3d 39, 44 (2d Cir.1995) (internal citations omitted). In the complaint, plaintiffs base their promissory estoppel claim "on [Lehman's] promise to make a first mortgage loan ...." (Ex. A to Donohue Aff. ¶ 54). Plaintiff Gerald Cohen testified in his deposition that two individuals at Lehman—Lynn Gray and Charles Manna—made representations to him in March, before the Application was executed, about Lehman's willingness to complete the deal within the timeframe plaintiffs wanted. (Deposition of Gerald Cohen ("Cohen Dep.") at 25–26, Pls.' Ex. 3). Cohen testified that Gray told him that "she would work through" the issues raised by plaintiffs about the deal. (*Id.* at 25). As to his conversation with Manna, Cohen was asked, "Do you remember anything about what Mr. Manna said?" Cohen answered, "Not specifically," but then stated that "[w]e wouldn't have done the deal with Lehman Brothers if I wasn't comfortable with his representations." (*Id.* at 26). Cohen reiterates these conversations in his declaration submitted in opposition to defendant's motion. (Declaration of Gerald

---

**2.** Defendant also argues that plaintiffs' contract claims are barred by the Statute of Frauds pursuant to New York's General Obligations Law § 5–703(1). Having found no binding agreement, I decline consideration of defendant's Statute of Frauds argument.

D. Cohen, sworn to on Nov. 6, 2002 ("Cohen Decl."), at ¶¶ 3–4, attached to Pls' Rule 56.1 Statement). These statements cannot be construed as clear and unambiguous promises to make the mortgage loan. *See Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, 95 Civ. 3901, 1997 WL 473968, at \*13 (S.D.N.Y. Aug.20, 1997) (finding statements that "[a party] may proceed to act on the enclosed offer without limitation" and "[the parties] are going to make a great team" were not clear and unambiguous promises). Thus, any promissory estoppel claim by plaintiffs based on an alleged promise to complete the transaction must fail.

In their opposition brief, however, plaintiffs recast their promissory estoppel claim as one based on the obligation to bargain in good faith. Plaintiffs rely exclusively on *Arcadian Phosphates, Inc. v. Arcadian Corp.*, wherein the Court of Appeals reversed the grant of summary judgment on plaintiff's promissory estoppel claim, finding that the district court "conflated [defendant's] substantive obligation with its obligation to bargain in good faith." 884 F.2d at 74 n. 4. The *Arcadian* Court found support for the plaintiff's promissory estoppel claim in the form of "evidence that [defendant] knew and approved of [plaintiff's] expenditures and collateral contracts," but suddenly changed its demand and then broke off negotiations when plaintiff rejected defendant's proposed modification. *Id.* at 74. Because these circumstances raised genuine issues of material fact as to defendant's obligation to negotiate in good faith, summary judgment was inappropriate.

Plaintiffs' reliance on *Arcadian* is misplaced because the evidence in the record in this case is quite different.[3] Here, the language of the Application itself—where Lehman expressly reserved the right not to consummate the transaction for any reason—forecloses plaintiffs' argument that by failing to complete the deal, Lehman failed to bargain in good faith. (*See* Ex. K to Donohue Aff. at 6 ("Lender may, at any time prior to the issuance of a Commitment and *at its sole discretion,* decline to proceed further with respect to a financing of the Property.") (emphasis added)). In addition, as mentioned above, the Application expressly provided that Lehman would not be bound until a Commitment had been issued and conditioned issuance of the Commitment on Lehman's completion of due diligence, including investigation of various environmental considerations.

The parties disagree about why exactly the transaction fell apart, and it is on this point that plaintiffs attempt to raise an issue of fact as to Lehman's alleged bad faith. In his deposition, Manna testified that his recollection was that "the reason we [Lehman] chose not to proceed is because of the state of the environmental remediation on the property." (Deposition of Charles Manna at 134, Pls' Ex. 2). Groblewski also testified that Manna told him "there were environmental questions and Lehman didn't want to proceed with the loan." (Deposition of Casimir Groblewski at 60, Ex. C to Donohue Aff.). However, plaintiffs point to Gerald Cohen's deposition testimony that he and

---

**3.** In actuality, the basis of plaintiffs' promissory estoppel claim is still defendant's failure to consummate the transaction. This is made evident by the fact that the injuries complained of—missing out on alternative financing opportunities and not getting the benefit of the deal—are the same under both theories. In *Arcadian*, by contrast, the plaintiff expended funds and entered into collateral contracts in reliance on the deal's progress. To the extent that plaintiffs rely on failure to consummate the transaction as the injury under this "failure to bargain in good faith" theory of promissory estoppel, they conflate the issues.

Groblewski thought the "real" reason Lehman decided not to complete the deal was "because the [interest] spreads were going against them and it would be difficult to sell this transaction on Wall Street." (Cohen Dep. at 42). On the issue of bad faith, this testimony avails plaintiffs nothing. Even assuming that the statements made by Manna and Gray and relied on by plaintiffs constitute clear and unambiguous promises to negotiate in good faith, all of the reasons in the record for Lehman's failure to consummate the deal fall within the discretionary language of the Application and none is sufficient to constitute a finding of bad faith on Lehman's part. Thus, there is no evidence in the record sufficient to raise an issue of fact as to whether defendant failed to negotiate in good faith. Accordingly, summary judgment is granted to defendant on plaintiffs' promissory estoppel claim.

## CONCLUSION

For the above-stated reasons, defendant's motion for summary judgment (docket no. 11) is granted. Defendant's motion to strike plaintiffs' jury demand is denied as moot. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED.