An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

JEFFREY SOFFER, AN INDIVIDUAL; AND TURNBERRY DEVELOPMENT, LLC, A FLORIDA LIMITED LIABILITY COMPANY,
Appellants,
vs.
THE BANK OF NOVA SCOTIA, NEW YORK AGENCY, A CANADIAN CHARTERED BANK ACTING THROUGH ITS NEW YORK AGENCY AS SUCCESSOR IN INTEREST TO DEUTSCHE BANK TRUST COMPANY AMERICAS, A NEW YORK BANKING CORPORATION; AND TSLV, LLC, A DELAWARE LIMITED LIABILITY COMPANY,
Respondents.

No. 61762

FILED

JUN 25 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

JEFFREY SOFFER, AN INDIVIDUAL; AND TURNBERRY DEVELOPMENT, LLC, A FLORIDA LIMITED LIABILITY COMPANY,
Appellants,
vs.
THE BANK OF NOVA SCOTIA, NEW YORK AGENCY, A CANADIAN CHARTERED BANK ACTING THROUGH ITS NEW YORK AGENCY AS SUCCESSOR IN INTEREST TO DEUTSCHE BANK TRUST COMPANY AMERICAS, A NEW YORK BANKING CORPORATION; AND TSLV, LLC, A DELAWARE LIMITED LIABILITY COMPANY,
Respondents.

No. 63157

SUPREME COURT
OF
NEVADA

(O) 1947A

14-20910

## ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

These are appeals from a district court summary judgment and a post-judgment order awarding costs in a contract action. Eighth Judicial District Court, Clark County; Allan R. Earl, Judge.

Appellant Jeffrey Soffer is the principal of the Turnberry group of companies, including appellant Turnberry Development, LLC, that was part of a joint venture that developed the Town Square Las Vegas Mall. To fund the construction of Town Square, Soffer obtained a $470,000,000 construction loan from a group of lending institutions (the Senior Lending Group), which included respondent The Bank of Nova Scotia (BNS). As the maturity date approached, the parties sought to negotiate a possible new loan. They entered into a pre-negotiation agreement (PNA), which required any final binding agreement to be written. The parties then exchanged a term sheet through a series of e-mails as they attempted to negotiate the new loan. The term sheet contained a disclaimer stating that it was not a written agreement for purposes of the PNA. The original loan went into default in March 2009, but the Senior Lending Group did not foreclose and the parties continued to negotiate. In December 2009, the parties exchanged a version of the term sheet that had a column entitled "FINAL, Agreed to by All Parties." Following the December exchange, the parties continued to work on completing the term sheet requirements and to negotiate the details of the agreement not yet resolved. However, negotiations eventually broke down and no agreement was finalized. A foreclosure sale was scheduled for February 2011.

Soffer and Turnberry Development initially filed a complaint against BNS wherein they sought, amongst other relief, to enjoin the foreclosure sale, but they ultimately abandoned that cause of action and the foreclosure sale was completed in March 2011. Thereafter, Soffer amended the complaint twice, eventually alleging the eight causes of action at issue in this appeal. Soffer's first five causes of action surrounded his allegations that BNS, as agent for the Senior Lending Group, breached a binding contract when it failed to conclude the new loan. In the three remaining causes of action, it is alleged that Turnberry Development, as property manager for Town Square, was entitled to unpaid management fees. BNS moved for summary judgment arguing that the agreement was unenforceable as a matter of law, and the relevant documents showed that it did not owe management fees to Turnberry Development. The district court granted the motion and dismissed the complaint in its entirety. BNS and respondent TSLV, Inc. then filed a memorandum of costs. Soffer and Turnberry Development moved to retax and settle costs, which the district court granted in part and denied in part and awarded BNS and TSLV $294,287.94 in costs. These appeals followed. The parties are familiar with the facts and we do not recount them further except as pertinent to our disposition.

*The district court did not err in dismissing Soffer's first five causes of action because there was no enforceable agreement as a matter of law*

"This court reviews a district court's grant of summary judgment de novo." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." NRCP 56(c).

Soffer argues that the district court erred in determining that the parties did not enter into a binding and enforceable agreement. He asserts that the term sheet was an agreement that represented a meeting of the minds on all material terms, and any specific terms not included were set forth in the original loan, which the parties intended to incorporate. Furthermore, Soffer contends that the disclaimer language was accidently included in the term sheet and must be ignored because it conflicts directly with the offer that was accepted by the parties through the exchange of e-mails to form a binding contract. As an initial matter, we note that both parties agree that New York law applies to the substantive legal issues in this matter.

"It is well settled that a contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself." *MHR Capital Partners, LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009). A "fundamental tenet of contract law [is] that enforceable legal rights do not arise from contract negotiations until both parties consent to be bound or, in any event, manifest that consent to each other." *Chrysler Capital Corp. v. Se. Hotel Props. Ltd. P'ship*, 697 F. Supp. 794, 799 (S.D.N.Y. 1988) (applying New York law). "'[W]hen a party gives forthright, reasonable signals that it means to be bound only by a written agreement,' that intent is honored." *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 47 (App. Div. 2009) (quoting *Jordan Panel Sys., Corp. v. Turner Constr. Co.*, 841 N.Y.S.2d 561, 565 (App. Div. 2007)).

We conclude that in this case the disclaimer on the term sheet and the language in the PNA clearly evinced the parties' intent not to be bound. First, the PNA unambiguously stated that the parties were free to

withdraw from negotiations without penalty "until a written agreement is executed." Second, not only did each page of the term sheet, which was circulated amongst the parties as it was being negotiated, state that it was "FOR DISCUSSION PURPOSES ONLY," but the disclaimer on the first page explicitly stated that it was *not a 'written agreement'* within the meaning" of the PNA. The plain and unambiguous language of the disclaimer cannot be ignored simply because the document's fourth column was titled "FINAL, Agreed to by All Parties." *See RM 14 FK Corp. v. Bank One Trust Co.*, N.A., 831 N.Y.S.2d 120, 123 (App. Div. 2007) (stating that a contract must also be interpreted so as not to "render any clause meaningless.").

Soffer also argues that the disclaimer language on the term sheet was irrelevant because the offer was contained within the e-mail, and the term sheet was merely attached to convey the agreed-upon terms. However, this argument fails because the language in the body of the e-mail itself does not indicate the intent to create a binding agreement. Rather, it simply asks that the attached terms be approved so the parties could continue to work toward a formal binding agreement. Furthermore, even if the e-mail's language was construed as an offer to enter into a binding commitment, the e-mail itself contained no essential material terms, but instead sought approval of the attachment, and could thus not stand alone as an offer. *See Kowalchuk*, 873 N.Y.S.2d at 46 (stating that, to be enforceable, an offer must include all essential terms). As such, we conclude that the term sheet was a necessary part of the parties' offer, thus making the disclaimer language relevant to that offer.

We further reject Soffer's alternative argument that even if the agreement was not enforceable, BNS was still required to negotiate in

good faith. Soffer bases his argument upon a distinction drawn by federal courts in New York between two different types of preliminary agreements. A Type I agreement is an agreement that is "preliminary only in form" as the "parties [may] desire a more elaborate formalization of the agreement," but the agreement is complete and enforceable. *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987). A Type II preliminary agreement occurs when there is a "mutual commitment to a contract on agreed major terms," but the parties recognize "the existence of open terms that remain to be negotiated." *Id.* The contract itself is not binding, but the parties "accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement." *Id.*

To determine whether an agreement is a Type II preliminary agreement, courts consider the following factors: whether the parties expressed an intent to be bound; the context of the negotiations; the existence of open terms; whether there was partial performance; and the necessity of putting the agreement in final form. *Teachers*, 670 F. Supp. at 499-503. In applying the factors from *Teachers*, federal courts have stated that "[t]he first factor, the language of the agreement, is 'the most important.' . . . Indeed, if the language of the agreement is clear that the parties did not intend to be bound, the Court need look no further." *Cohen v. Lehman Bros. Bank, FSB*, 273 F. Supp. 2d 524, 528 (S.D.N.Y. 2003) (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989)). Here, because the plain language within the four corners of the term sheet contained an explicit disclaimer that the negotiations were non-binding, and the PNA allowed for negotiation between the parties

SUPREME COURT
OF
NEVADA

(O) 1947A

without any possibility of incurring liability, our inquiry ends. Thus, we conclude that the district court did not err in dismissing Soffer's and Turnberry Development's first five causes of action.

*The district court erred in dismissing as a matter of law the remaining three causes of action related to Turnberry Development's management fees*

Soffer and Turnberry Development argue that the district court erred in dismissing the remaining three causes of action for Turnberry Development's unpaid management fees. They claim that evidence was presented to show that the Senior Lending Group explicitly requested that Turnberry Development continue to manage the property during the time the parties were negotiating the possible new loan, and while the loan was in default, thus, creating an oral contract. The Senior Lending Group then breached that contract when it failed to pay for those services. BNS counters that the relevant documents show that one of the other Turnberry companies, Turnberry/Centra Sub, LLC, not BNS, was responsible for paying the management fees. Furthermore, BNS contends that Turnberry Development's claim of an oral agreement is barred by the original loan agreement and the PNA.

The district court concluded that Turnberry Development's claim of an oral agreement for the payment of Turnberry Development's management fees was "barred by the PNA and the Loan Agreement as a matter of law." The court further concluded that the property management agreement provided that Turnberry/Centra was obligated to pay Turnberry Development's management fees, not BNS. However, our review of the record indicates that both the PNA and the original loan were entered into between Turnberry/Centra and the agent on behalf of the Senior Lending Group. Turnberry Development is an affiliate of Turnberry/Centra and, under New York law, "affiliated corporations are,

SUPREME COURT
OF
NEVADA

(O) 1947A

7

as a rule, treated separately and independently so that one will not be held liable for the contractual obligations of the other absent a demonstration that there was an exercise of complete dominion and control." *Sheridan Broad. Corp. v. Small*, 798 N.Y.S.2d 45, 46 (App. Div. 2005).

In this case, BNS has not made the requisite demonstration of complete domination and control by Turnberry/Centra over Turnberry Development. As such, while the PNA and original loan governed the relationship between BNS and Turnberry/Centra, it has no bearing on Turnberry Development and its dealings with BNS. Furthermore, the fact that the property management agreement was between Turnberry/Centra and Turnberry Development would not necessarily preclude a separate contract between BNS and Turnberry Development. Therefore, we conclude that the district court erred in determining that, as a matter of law, these documents mandated dismissal of Soffer's and Turnberry Development's three remaining causes of action for Turnberry Development's management fees.

Accordingly, we affirm that portion of the district court's judgment dismissing Soffer's and Turnberry Development's first five causes of action, and we reverse that portion of the district court's judgment dismissing the remaining three causes of action for Turnberry Development's management fees, and we remand this matter to the district court for proceedings consistent with this order.

Based on our decision to partially reverse the district court's summary judgment, we conclude that the district court's order awarding costs to BNS and TSLV is premature. Accordingly, we reverse the district court's award of costs. *Cf. Kahn v. Morse & Mowbray*, 121 Nev. 464, 479-

80, 117 P.3d 227, 238 (2005) (reversing an entire fee award made under NRS 18.010(2)(b) when summary judgment was reversed in part and affirmed in part on appeal).

It is so ORDERED.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc:  Hon. Allan R. Earl, District Judge
     Ara H. Shirinian, Settlement Judge
     Meister Seelig & Fein LLP
     Carbajal & McNutt, LLP
     Lemons, Grundy & Eisenberg
     Katten Muchin Rosenman LLP/New York
     Katten Muchin Rosenman LLP/Los Angeles
     Ballard Spahr, LLP
     Eighth District Court Clerk