553 So.2d 741 (1989)
Shayan KERAMATI, Etc., et al., Appellants,
v.
Gerald SCHACKOW, et al., Appellees.
No. 88-2137.
District Court of Appeal of Florida, Fifth District.
December 14, 1989.
*742 Richard H. Critchlow and Mara Beth Sommers, of McDermott, Will & Emery, Miami, for appellants.
Peter N. Smith and Ronald L. Harrop, of Gurney & Handley, P.A., Orlando, for appellees.
SHARP, Judge.
Shayan Keramati (a minor), and his parents, Pamela and Bijan, appeal from a final summary judgment denying them any relief in their legal malpractice suit against Schackow and McGalliard, attorneys who represented them in an earlier medical malpractice suit. Their medical malpractice suit against Dr. Richardson and the Monroe Memorial Hospital in Ocala, Florida, terminated in 1983 when the Keramatis accepted a $200,000 settlement. In this suit, they assert that Schackow and McGalliard breached their duty to provide them with reasonable legal services and advice in *743 the medical malpractice suit because the settlement figure was substantially less than their claims were worth, and the attorneys had seriously compromised the ultimate success of the suit by letting the two-year statute of limitations run on their claims against Dr. Richardson,[1] if not the hospital.[2] The trial court ruled the Keramatis are equitably estopped to assert any legal malpractice claims against Schackow and McGalliard because they agreed to the settlement and accepted the funds, after they became aware of the statute of limitations problem. We reverse.
The factual background of this litigation is not in dispute. It is inextricably intertwined with another case decided by this court, Roberts v. Casey, 413 So.2d 1226 (Fla. 5th DCA), rev. denied, 424 So.2d 763 (Fla. 1982). In Roberts, this court held that an infant and her parents were barred by the two-year statute of limitations from bringing a medical malpractice suit against Dr. Casey and the Monroe Memorial Hospital. The issue in that case was whether a "start up" hearing, at which nothing material was accomplished, held pursuant to the mandatory medical mediation statute section 768.44, Florida Statutes (1977),[3] tolled the running of the statute of limitations. Both the Keramatis and the Roberts were represented by Schackow and McGalliard, and both clients' cases were presented at the same start-up hearing.
Shayan, and the Roberts' child, were born at the Monroe Memorial Hospital at approximately the same time. Both allegedly were infected in the newborn nursery with a streptoccocus bacteria which caused spinal meningitis in both children. The disease was allegedly not promptly diagnosed by Dr. Richardson in the Keramatis' case, nor by Dr. Casey in the Roberts' case. Dr. Casey and Dr. Richardson were partners. As a result, the Roberts' child was severely retarded and the Keramatis' child has a profound loss of hearing.
Schackow and McGalliard filed separate civil suits in the Roberts' and Keramatis' cases. They were assigned to different circuit judges. When the circuit judge in the Roberts' case ruled the cause of action could not be pursued because the statute of limitations had run, the parties in the Keramatis' litigation agreed to stay their cause, in order to see how the appellate court would rule in Roberts. This court's opinion came down adversely to the Roberts, and the supreme court declined to accept discretionary review. However, the trial judge handling the Keramatis' case refused to enter a summary judgment for the doctor and hospital. It felt Dr. Richardson was estopped by his assent to the "start-up" hearing, and the four-year statute applied to the cause of action against the hospital. See Whitney v. Marion County Hospital District, 416 So.2d 500 (Fla. 5th DCA 1982), overruled on other grounds by Orange County v. Piper, 523 So.2d 196 (Fla. 5th DCA), rev. denied, 531 So.2d 1354 (Fla. 1988).
At this point, the depositions and allegations in the record are in conflict as to why Schackow and McGalliard urged the Keramatis to settle their case for $200,000, and why the Keramatis agreed to do so. We, however, must resolve all doubts and inferences in favor of the Keramatis, because the trial judge ruled against them on the basis of a summary judgment. Delaney v. Breeding's Homestead Drug Co., 93 So.2d 116 (Fla. 1957); Yost v. Transit Co., 66 So.2d 214 (Fla. 1953).
Even as late as 1983, Schackow and McGillard asserted the Keramatis had suffered damages in the range of $500,000 to $1,000,000. Pamela Keramati testified in her deposition that the attorneys originally told her it was possibly a $2,000,000 case. An expert legal witness for the Keramatis *744 (Highsmith) who was deposed in 1988, testified it should have been settled for in excess of $1,000,000. He thought the Keramatis had a solid jury case against both the hospital and the doctor. If liability were clear, he estimated the Keramatis' damages at $2,000,000.
Pamela testified in her deposition that she thought the settlement of $200,000 was grossly unfair. Schackow and McGalliard told her that the Roberts case made the Keramatis' case "weak" against both Dr. Richardson and the hospital. They urged her to settle, and said she had no choice. Schackow said he would no longer represent her, and it would be too expensive to continue the litigation. Pamela testified she expressed her feeling that the $200,000 settlement was inadequate to both Schackow and McGalliard.
Lending support and substance to Pamela's testimony, the legal expert witness for the Keramatis testified that in his opinion, the loss of the Roberts case on the running of the two-year statute of limitations issue dictated the necessity to settle in Schackow's and McGalliard's minds. He also testified that despite the convolutions of the medical malpractice statute, there was a basis for a legal malpractice suit against Schackow and McGalliard for having let the statute of limitations run. Without the Roberts case, he did not think the Keramatis' case would have settled for $200,000.
In ruling that the Keramatis were estopped to bring the legal malpractice suit, the trial court had to have disregarded the testimony summarized above. It relied instead on the recitations in the court record regarding the settlement with Dr. Richardson and the hospital. In the closing statement prepared by the hospital, the Keramatis certified that the $200,000 was "in full and just settlement of any and all ... claims ... against the hospital and doctor." Bijan, as guardian for Shayan, and the court both recite that acceptance of the settlement was in the child's "best interests." The court also found that the Keramatis knew of the possible legal malpractice claim against their attorneys before they settled the case.
We fail to see how res judicata or collateral estoppel can play any part in this case. Both doctrines require the identity of the parties or their privies to be applicable.[4] The defendants in the prior suit were Dr. Richardson and the hospital. In this case, the defendants are Schackow and McGalliard.
Further, in order for collateral estoppel to be applicable, the same issue must have been litigated in the first suit. See Trucking Employees of Norty Jersey Welfare Fund, Inc. v. Romano, 450 So.2d 843 (Fla. 1984); holding limited by, Zeidwig v. Ward, 548 So.2d 209 (Fla. 1989);[5]Markel v. Dizney, 534 So.2d 1205 (Fla. 5th DCA 1988); City of Tampa v. Lewis, 488 So.2d 860 (Fla. 2d DCA), rev. denied, 494 So.2d 1151 (Fla. 1986). Since the first suit ended in a settlement, it is difficult to argue that any issue was litigated in that case. See United States v. International Building Co., 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953). At a minimum, an additional affirmative showing that the parties intended a settlement to operate as a final adjudication of another issue is required. See Balbirer v. Austin, 790 F.2d 1524 (11th Cir.1986). There is no such showing in this record.
In the medical malpractice case, the adequacy of the amount settled for was not litigated, nor was the adequacy of Schackow's and McGalliards' representation in recommending such a settlement. This is not a suit against the defendants in the first suit to obtain additional damages, nor even to set the settlement aside. Cf. Lee v. State Farm Mutual Automobile Ins. Co., 303 So.2d 349 (Fla. 3d DCA 1974). Rather, *745 this second suit involves whether the attorneys committed legal malpractice in their first suit.
The causes of actions and issues are clearly not the same. The Minnesota court in Virsen v. Rosso, Beutel, Johnson, Rosso & Ebersold, 356 N.W.2d 333, 335 (Minn. App. 1984), rejected an attorney/defendant's argument that his former client was bound by agreeing to settle in an earlier lawsuit he handled for her:
The respondent's position, ... fails to distinguish between cases where a party is simply claiming that a settlement was inequitable, and cases such as this one for legal malpractice which allege reliance upon negligent conduct of an attorney... . [T]he prayer for relief in this action is against the attorney and not against the settlement itself or the parties thereto.
Nor can we find an equitable basis here to apply those cases which hold a party estopped in subsequent litigation to take a position inconsistent with one taken in a prior suit involving the same party. See, e.g., Lambert v. Nationwide Mutual Fire Insurance Co., 456 So.2d 517 (Fla. 1st DCA 1984); Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337 (Fla. 3d DCA), cert. denied, 378 So.2d 342 (Fla. 1979). The same parties are not involved here, but moreover, the positions taken by the Keramatis in both suits are not necessarily inconsistent, nor damaging to Schackow and McGalliard. Cf. Wooten v. Rhodus, 470 So.2d 844 (Fla. 5th DCA 1985). The $200,000.00 settlement may indeed have been fair and the best obtainable, due to the malpractice of the attorneys involved. In such a case, it may well be the clients' duty to accept the lesser amount, in order to mitigate their damages. The attorney will ultimately be entitled to set these recoveries off against any malpractice damage judgment subsequently obtained against them. Thus the settlement appears to benefit them more than to harm them.
Further, we find no basis to apply the broader, more generalized doctrine of estoppel in pais[6] as a matter of law against the Keramatis in their suit against the attorneys who negotiated and handled the settlement. The record reveals the Keramatis' assent to the settlement, but no false representation by them to their attorneys. Nor do we think any duty arose on their part to take either the settlement offer, or sue the attorneys for legal malpractice. This record does not establish as a matter of law that Schackow and McGalliard altered their situation to their detriment. At the point of settlement, the possible grounds for legal malpractice had arisen, and as noted above, the settlement could well have mitigated the Keramatis' damages, rather than affecting the attorneys adversely.
The existence of an estoppel in pais is generally a mixed question of law and fact, and as such must generally be found and settled by the trier of fact, if there is any dispute as to the facts of its existence. 28 Am.Jur.2d 831, Estoppel § 149; Brewer v. Vandervalk, 374 So.2d 553 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1191 (Fla. 1980). This record clearly raises factual disputes which would justify a jury in refusing to find an estoppel against the Keramatis.[7] The circumstances framed by this record make the Keramatis' acceptance of the settlement understandable, and they may counter any claim that the attorneys took any action in reliance on their acceptance which resulted in their detriment. See Taylor v. Kenco Chemical and Manufacturing Corporation, 465 So.2d 581 (Fla. 1st DCA 1985).
The courts in other jurisdictions have considered and rejected arguments in legal malpractice cases similar to the one raised by appellees in this case that mere acceptance *746 of a settlement in a prior suit foreclosed the client from bringing a malpractice suit against the attorney who handled the case. In Mazzei v. Pokorny, Schrenzel & Pokorny, 125 A.D.2d 374, 509 N.Y.S.2d 100 (N.Y.A.D. 1986), an attorney failed to serve the required notices of claim on New York City for all but one cause of action. The client settled the case with the city and gave it a general release. The appellate court agreed with the trial court's ruling that the settlement and release did not preclude a later malpractice suit against the attorney's law firm. The attorney or law firm is not a successive tortfeasor to the city; and the causes of action are not the same. Missing a filing deadline and suffering a bar by the applicable statute of limitation is regretably one of the most common errors for which attorneys may be sued for legal malpractice.[8]
Even if the complaint in the malpractice suit attacks the fairness or adequacy of the settlement on the merits, courts have permitted legal malpractice suits in cases where the paucity of the settlement was caused by a breach of duty on the part of the attorney. In Oakes & Kanatz v. Schmidt, 391 N.W.2d 51 (Minn.App. 1986), the client alleged she was forced to settle her case below what it was worth because the attorney was inadequately prepared, and he did not properly advise her as to the significance of the settlement. See also Helmbrecht v. St. Paul Insurance Co., 122 Wis.2d 94, 362 N.W.2d 118 (Wis. 1985); Fishman v. Brooks, 396 Mass. 643, 487 N.E.2d 1377 (Mass. 1986); Rodriguez v. Horton, 95 N.M. 356, 622 P.2d 261 (N.M. App. 1980).
In summary, we think the record in this case raises material issues of fact which should not be cut short in the appellees' favor by summary judgment. It will be necessary, in order for the Kermatis to prevail, to prove that Schackow and McGalliard breached their duty to represent them in a reasonable, competent manner, by requiring them to settle for an unreasonably low amount because they mishandled the medical malpractice suit either by letting the statute of limitations run, and/or by failing to properly analyze and evaluate their damages versus potential recovery. This breach of duty is in essence failure on the part of an attorney to measure up to the standard of reasonable service expected of members of the Florida Bar in handling that kind of litigation.[9] In addition, the Keramatis will also have to prove that had the medical malpractice suit been properly handled, they could have recovered substantially greater damages than the settlement amount. See Hatcher v. Roberts, 478 So.2d 1083 (Fla. 1st DCA 1985), rev. denied, 488 So.2d 68 (Fla. 1986). These issues are sufficiently raised by this record; and they are not barred by the Keramatis' prior settlement as a matter of law. However, on remand, Schackow and McGalliard may present their defense of estoppel for factual determination by the jury. Accordingly, the summary judgment for the appellees is reversed.
REVERSED; REMANDED FOR FURTHER PROCEEDINGS.
GOSHORN, J. and ORFINGER, M., Associate Judge, concur.
NOTES
[1] § 95.11(4)(b), Fla. Stat. (1977).
[2] § 768.28(1), Fla. Stat. (1977); Whitney v. Marion County Hospital District, 416 So.2d 500 (Fla. 5th DCA 1982), overruled on other grounds by Orange County v. Piper, 523 So.2d 196 (Fla. 5th DCA), rev. denied, 531 So.2d 1354 (Fla. 1988).
[3] Later held to be unconstitutional, unfortunately for the Roberts and the Keramatis, only prospectively. See Aldana v. Holub, 381 So.2d 231 (Fla. 1980).
[4] Markel v. Dizney, 534 So.2d 1205 (Fla. 5th DCA 1988); Argerenon v. St. Andrews Cove I Condominium Ass'n., Inc., 507 So.2d 709 (Fla. 2d DCA 1987); Hittel v. Rosenhagen, 492 So.2d 1086 (Fla. 4th DCA 1986); Barnett Bank of Miami v. Mutual of Omaha Ins. Co., 354 So.2d 114 (Fla. 3d DCA 1978); 32 Fla.Jur.2d Judgments and Decrees § 147 at 546.
[5] Zeidwig holds mutuality of parties is not a prerequisite to the defensive application of collateral estoppel in the criminal-to-civil context.
[6] State ex rel. Watson v. Gray, 48 So.2d 84, 88 (Fla. 1950):

The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.
[7] Cf. Davenport v. Stone, 528 So.2d 45 (Fla. 3d DCA 1988).
[8] See Chapman By and Through Chapman v. Garcia, 463 So.2d 528 (Fla. 3d DCA 1985).
[9] See Daytona Development Corp. v. McFarland, 505 So.2d 464 (Fla. 2d DCA 1987); Dillard Smith Construction Co. v. Greene, 337 So.2d 841 (Fla. 1st DCA 1976).