DAVID A. PRESSLER, APPELLANT, v. THE CITY OF RENO; DORI OWEN; RALPH JAECK; CHARLES McNEELY; AND SUZANNA STIGER, RESPONDENTS.

No. 36662

August 2, 2002                                              50 P.3d 1096

[Rehearing denied September 5, 2002]

---

*Goedert & Michaels,* Reno, for Appellant.

*Patricia A. Lynch,* City Attorney, and *Donald L. Christensen,* Deputy City Attorney, Reno, for Respondents.

## OPINION

By the Court, LEAVITT, J.:

Appellant David Pressler raises several claims of error relating to a district court order granting summary judgment in favor of the City of Reno and its employees ("City"). We conclude that the amendment to the City's charter converting various appointed positions to at-will status was not intended to apply retroactively and that the district court erred in concluding that Pressler was an at-will employee at the time of his termination. Thus, summary judgment was therefore improper. In addition, in the interest of judicial economy and to provide guidance to the district court in the subsequent proceedings, we consider Pressler's issue regarding whether sick benefits vest once an employee becomes ill. We conclude that sick benefits that are provided as a benefit of employment do not vest simply because they are being utilized and, accordingly, may be ended upon proper termination of employment.

### FACTS

David Pressler was terminated from his position as Director of Parks and Recreation for the City of Reno on January 23, 1998. Pressler had been employed by the City for over twenty-six years prior to his termination. Until July 1, 1997, when legislative changes to the City charter became effective, Pressler, as an appointed employee, could be terminated only for cause.

Pressler was terminated following an investigation into allegations that he created a hostile work environment and sexually harassed other employees. The allegations arose on June 10, 1997, and were self-reported by Pressler. Pressler was placed on administrative leave while an investigation was conducted. After an investigation by the City's affirmative action officer and a deputy city attorney, both recommended that Pressler be terminated.

Throughout the course of the investigation, Pressler was not provided the names of the employees bringing allegations of misconduct against him, though he knew the identity of some of the

employees from his discussions with them before he reported the complaints. In addition, while on leave, he was instructed to stay away from his workplace and his employees. While still on leave, Pressler requested that his status be changed to sick leave, citing an inability to work due to illness relating to the stress of the investigation. Pressler's request was granted, and he remained on sick leave until his termination.

The City provided Pressler with a hearing before a hearing officer selected by the city manager but opposed by Pressler. During the hearing, the city employees who conducted the investigation into the allegations of Pressler's misconduct orally presented their findings. Based on their recollection and notes, these employees provided testimony, which included hearsay statements from employee interviews they conducted. The interviews were not taped or documented in their entirety, and the employees who were interviewed were not present at the hearing. At the hearing, Pressler responded to questions, but his testimony was cut short because the hearing officer needed to leave for his return flight. Pressler's request to continue the hearing at a later time was rejected, and he was instead assured that all of his documentation would be reviewed. Pressler had previously submitted documents rebutting each of the allegations and a large number of letters from individuals attesting to his good character and reputation. Pressler was subsequently terminated pursuant to the hearing officer's recommendation. Upon his termination, the City paid Pressler for 300 of the 786 sick leave hours he had remaining.

Pressler brought suit against the City and various city employees involved in the investigation against him. He claims that his termination and the denial of all of his accrued sick leave without an adequate hearing was a violation of his right to due process. The district court granted summary judgment in favor of all of the defendants, and Pressler brought this appeal.

## DISCUSSION

An order granting summary judgment is reviewed by this court using a de novo standard of review.[1] Any questions of law are also reviewed de novo.[2] Summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[3] If there

[1] *Nicholas v. Public Employees' Ret. Board,* 116 Nev. 40, 43, 992 P.2d 262, 264 (2000).

[2] *SIIS v. United Exposition Services Co.,* 109 Nev. 28, 30, 846 P.2d 294, 295 (1993).

[3] NRCP 56(c).

is the slightest doubt as to any material issue of fact, the litigant has a right to trial by a jury.[4] The court must construe the pleadings and evidence in the light most favorable to the nonmoving party.[5]

Here, the district court granted the City's motion for summary judgment on all causes of action on the basis that at the time of his termination, Pressler was an at-will employee and therefore did not have a property interest in continued employment or in his accrued sick leave. We conclude that the district court erred in concluding that Pressler had only at-will employment status, thus making summary judgment improper.

### Retroactivity of city charter amendments

The protections of due process only attach when there is a deprivation of a protected property or liberty interest.[6] Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."[7] Employees who may be terminated only for cause have a constitutionally protected property interest and are entitled to due process before being deprived of that interest.[8] However, merely having an expectation of continued employment does not create a property interest.[9] A contract also can be the basis of a property right,[10] and the state may not pass a law impairing the obligation of contracts.[11]

It is uncontroverted that from the time Pressler completed his probationary period after being hired in 1971, until June 30,

---

[4]*Roy v. Lancaster,* 107 Nev. 460, 462, 814 P.2d 75, 76 (1991).

[5]*Ortega v. Reyna,* 114 Nev. 55, 58, 953 P.2d 18, 20 (1998).

[6]Nev. Const. art. 1, § 8, cl. 5; *see also Tarkanian v. Nat'l Collegiate Athletic Ass'n,* 103 Nev. 331, 337, 741 P.2d 1345, 1349 (1987), *rev'd on other grounds,* 488 U.S. 179 (1988).

[7]*Board of Regents v. Roth,* 408 U.S. 564, 577 (1972), *modified on other grounds by Paul v. Davis,* 424 U.S. 693 (1976).

[8]*State ex rel. Sweikert v. Briare,* 94 Nev. 752, 755, 588 P.2d 542, 544 (1978).

[9]*Vancheri v. GNLV Corp.,* 105 Nev. 417, 422, 777 P.2d 366, 368 (1989).

[10]*Perry v. Sindermann,* 408 U.S. 593, 601 (1972), *overruled in part on other grounds by Rust v. Sullivan,* 500 U.S. 173 (1991).

[11]Nev. Const. art. 1, § 15.

1997, he had a property interest in his employment–first by virtue of his status as a civil servant, and later by the provision in the Reno City Charter which allowed removal only for cause.[12]

During the 1997 legislative session, the City proposed changes to its charter, including removal of the for-cause provision. Pressler contends the conduct underlying his termination occurred when he was protected by the charter's for-cause provision and that the amendment to the charter did not convert him to an at-will employee. He further contends that the changes to the charter could not be applied retroactively because he had an employment contract with the City based on the charter provision in effect when he accepted his appointment. Conversely, the City alleges that Pressler became an at-will employee on July 1, 1997, and that the city manager could properly terminate Pressler for no reason.[13] We conclude that the City's argument lacks merit.

We have previously concluded that when the Legislature does not state otherwise, statutes have only prospective effect.[14] Here, the statute does not provide for retroactive application, and the legislative history indicates that the Legislature intended it to have only prospective effect.

When the bill draft was requested, one of the senators asked the city's legislative relations administrator if the changes ''[were] considered a housekeeping measure with no expectation of controversy'' and received an affirmative response.[15] The serious implications of the change if applied to current employees, as evidenced by this controversy, would appear to be more than a housekeeping matter and arguably would raise some controversy. On the other hand, a prospective application of the change would arguably be less controversial and more in the line of a housekeeping matter since affected employees would have been aware of their status at the inception of their employment. In addition, one senator questioned whether notice of the appeals process would be provided to the employee before acceptance of the appointment, while another questioned whether employees would be given notice that they were not afforded the for-cause protec-

[12]Reno City Charter § 3.020(5), prior to being amended in 1997, provided that department heads could be removed only for cause. *See* 1997 Nev. Stat., ch. 210, § 5, at 736.

[13]*See Coast Hotels v. State, Labor Comm'n,* 117 Nev. 835, 843, 34 P.3d 546, 551-52 (2001) (explaining employer has right to terminate at-will employee ''for any reason, subject to limited public policy exceptions'').

[14]*Nevada Power v. Metropolitan Dev. Co.,* 104 Nev. 684, 686, 765 P.2d 1162, 1163 (1988).

[15]Hearing on S.B. 44 Before the Senate Comm. on Government Affairs, 69th Leg., 5 (Nev., Jan. 27, 1997).

tion when they accepted appointments,[16] both of which indicate that the legislators envisioned only a prospective application. Further, senators asked various questions which indicated concern regarding decreased protection for affected employees.[17]

Based on the presumption that statutes apply prospectively unless otherwise stated and on the legislative history, we conclude that the city charter amendments apply only prospectively. Accordingly, we conclude that the district court erred in granting summary judgment on the basis that Pressler was an at-will employee. We conclude that as a matter of law, Pressler could be removed only for cause as provided by the city charter at the time he accepted his appointment.[18]

## Vesting of sick leave

Pressler contends that his right to sick leave benefits was a contractual right protected by Article 1, Section 15 of Nevada's Constitution that became a vested interest once he was placed on sick leave. We disagree.

Pressler relies on our decision in *Nicholas v. Public Employees' Retirement Board*[19] to support his contention. However, Pressler has not demonstrated that he has a contractual or a vested right to utilize sick leave once he is no longer an employee. Therefore, our holding in *Nicholas,* that once a public employee's pension benefits are vested, that right is constitutionally protected,[20] is inapplicable to this case. The City's sick leave policy specifically provided that upon termination, an employee would be paid only a portion of the accumulated sick leave up to a specified maximum. If Pressler was properly terminated, he was paid the amount due under the policy and has failed to support his contention that he is entitled to more.

We conclude that the district court erred in concluding that Pressler was an at-will employee and as a result granting summary judgment with respect to all of his claims. We reverse the order

---

[16]Hearing on S.B. 44 Before the Senate Comm. on Government Affairs, 69th Leg., 10 (Nev., Feb. 3, 1997).

[17]*Id.* at 7-11.

[18]Based on this conclusion, Pressler had a right to due process before being deprived of his employment. However, it is unnecessary for us to consider at this time whether the hearing Pressler was provided with comported with due process requirements. This is an issue that the district court will need to consider on remand.

[19]116 Nev. 40, 992 P.2d 262 (2000).

[20]*Id.* at 43-44, 992 P.2d at 264-65.

of the district court and remand this case for further proceedings consistent with this opinion.[21]

MAUPIN, C. J., YOUNG, SHEARING, ROSE and BECKER, JJ., concur.

---

[21]THE HONORABLE DEBORAH A. AGOSTI, Justice, voluntarily recused herself from participation in the decision of this appeal.