FRANK KAHN, as Personal Representative for WILLIAM KAHN, Deceased, and CHRISTINE KAHN, Individually and as Trustee of the KAHN FAMILY TRUST, Appellants, *v.* MORSE & MOWBRAY, a Nevada Professional Corporation; and CHRISTOPHER H. BYRD, Individually, Respondents.

No. 41148

FRANK KAHN, as Personal Representative for WILLIAM KAHN, Deceased, and CHRISTINE KAHN, Individually and as Trustee of the KAHN FAMILY TRUST, Appellants, *v.* MORSE & MOWBRAY, a Nevada Professional Corporation; and CHRISTOPHER H. BYRD, Individually, Respondents.

No. 41508

August 11, 2005                                     117 P.3d 227

[Rehearing denied September 28, 2005]

*JoNell Thomas,* Las Vegas, for Appellants.

*Rawlings Olson Cannon Gormley & Desruisseaux* and *Barbara I. Johnston* and *James R. Olson,* Las Vegas, for Respondents.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, ROSE, J.:

Appellants, William (now deceased) and Christine Kahn and the Kahn Family Trust (the Kahns), sued their prior attorney, Christopher Byrd and his firm, Morse & Mowbray, for legal malpractice. Byrd and Morse & Mowbray filed a motion for summary judgment, alleging that the factual and legal issues in the case had already been litigated and resolved in another action. The district court granted the motion for summary judgment and later issued an order granting attorney fees to Byrd and Morse & Mowbray under NRS 18.010(2)(b), finding that the malpractice action was brought without reasonable grounds. The Kahns also appeal that order. We consolidated the appeals.

On appeal the Kahns allege that the district court erred in granting the motion for summary judgment because they were not collaterally estopped from raising the issues involved in the legal malpractice suit and because material issues of fact remain unresolved. In addition, the Kahns contend that the district court abused its discretion in awarding attorney fees because there was a sound basis for the complaint. We agree with both of these contentions. As the district court did not actually and necessarily litigate all of the issues supporting the Kahns' claims for legal malpractice, the district court improperly granted summary judgment on those claims. As a result, we conclude the district court abused its discretion in awarding attorney fees. However, we conclude that because the Kahns did not establish a prima facie case in regard to their claim for intentional infliction of emotional distress, the district court properly granted summary judgment on that particular claim. Moreover, we also conclude that a claim for negligent infliction of emotional distress is improper when based upon a legal malpractice claim.

## FACTS AND PROCEDURAL HISTORY

In 1980, the Kahns allegedly entered into an oral agreement with their son, Eric Kahn. The agreement stated that if the Kahns ever decided to sell their business, A-1 Equipment Rental, Inc., a Nevada corporation, to a third party, they would permit Eric to use the proceeds from the sale, interest free, for a term of five years. Eric was to repay the loan after five years. This agreement did not include any rights to proceeds acquired from the sale of the land, which the Kahns also owned. In October 1997, the Kahns' other son, Frank Kahn, offered to purchase the business, and the Kahns accepted the offer. In 1997, Eric Kahn sued his parents to enforce the 1980 agreement, and he sued his brother, Frank, for intentional interference with contractual relations, negligent interference with contractual relations, and breach of fiduciary duty. Frank filed counterclaims against Eric and cross-claims against his parents.

The Kahns hired Byrd and his law firm, Morse & Mowbray, to represent them in the lawsuit. William Kahn alleged that Byrd told the Kahns that they had good defenses to Eric's complaint and that they had several worthy counterclaims. Byrd, on the Kahns' behalf, answered the complaint and filed several counterclaims against Eric for repayment of loans, usurpation of corporate profits, breach of fiduciary duty, conversion of profits, unpaid rent, emotional distress, and an accounting. Due to the Kahns' ages and related health problems, Byrd filed a motion for preferential setting for trial, which the district court granted, setting the trial date for January 25, 1999.

Shortly before the trial date, Byrd informed the Kahns that personal reasons prevented him from trying the case and that the trial date would need to be continued to facilitate discovery. As a result, Byrd stipulated with Eric's attorney to continue the trial until April 20, 1999.

Frank's deposition was set for March 18, 1999. A day before the scheduled deposition, a meeting was held at the office of Frederic Berkley, Frank Kahn's attorney, to discuss the possibility of settlement. In attendance were William, Christine, Frank, Berkley, and Byrd. This meeting was prompted by Eric's deposition testimony that he was willing to purchase the business, inclusive of the land, for $700,000. Allegedly, during the course of these discussions, Christine called Eric to discuss the option of settling the case.

The parties met early the following morning and engaged in extensive discussions regarding settlement. During the course of the negotiations, Byrd engaged in separate conversations with the Kahns, as well as separate conversations with Frank and Berkley. After several hours of negotiations, an agreement was placed on the record.

Under the recorded settlement agreement, the Kahns agreed to sell to Eric A-1 Rental, Inc., including the land, for a purchase price of $700,000. In addition, all of the parties agreed to the mutual release of all claims. The parties also agreed to work together to ensure that the tax impact of the purchase would be mutually beneficial to all the parties. To further this goal, the parties agreed to use Ron Smith, a certified public accountant, to structure the agreement.

Shortly thereafter, but before the parties could sign a written agreement memorializing the recorded settlement agreement, the Kahns reneged on the settlement and raised the purchase price on the property by $500,000. The Kahns also contested Eric's claim that they released all claims and counterclaims. The Kahns attempted to convince Byrd and his firm to contest Eric's contentions regarding the settlement agreement, but Byrd and the Morse & Mowbray firm declined to pursue the matter. As a result, Lamond Mills was substituted as counsel in place of Byrd.

On June 23, 1999, the district court issued an order granting Eric's counter-motion for specific enforcement of the agreement. The district court concluded that dictating the agreement to the court reporter was sufficient to constitute a written stipulation under applicable court rules. Additionally, the district court determined that an evidentiary hearing was required, pursuant to *Resnick v. Valente,*[1] to allow the district court to determine if the parties intended to enter into a comprehensive agreement and to give the Kahns an opportunity to assert any possible defenses to the enforcement of the settlement agreement.

The district court held an evidentiary hearing on August 23 and 24, 1999. At the hearing, Eric, Berkley, William, Byrd, and Frank testified concerning the settlement negotiations and the resulting agreement.

Eric testified that under the terms of the agreement he agreed to pay, within 90 days or at the close of escrow, $700,000 in exchange for the business and property. Eric testified that as part of the agreement all the complaints that the parties had against each other would be dismissed. In addition, he testified that his brother's attorney, Berkley, reiterated the purchase price, the 90-day escrow requirement, and the release of claims on the record.

Berkley, on his part, testified as to the terms of the agreement and to the negotiations preceding the settlement. Berkley stated that during the course of the negotiations, he met and spoke with Frank, Byrd, Christine, and William about the specifics of the settlement. Specifically, Berkley testified that the purpose of the

---

[1]97 Nev. 615, 637 P.2d 1205 (1981).

group meetings was "[t]o discuss the settlement discussions as they pertained to the cross-claim and the counterclaims that we had in the lawsuit." All of the parties agreed to the terms on the record. Berkley did indicate that he expected the recorded transcript to be reduced to writing and signed by the parties.

Byrd testified that after Eric Kahn's deposition, taken on March 17, 1999, Byrd attended a conference at Berkley's office to discuss the possibility of settling the case. During those discussions, Christine called Eric to discuss the settlement and invited Eric to dinner. The next morning the parties engaged in settlement discussions. Byrd noted that all the parties involved gave the attorneys the authority to enter into the settlement, which was indicated in the record. In the afternoon, the parties agreed to settle and to place the settlement on the record. Byrd stated that he believed the settlement agreement was binding upon the parties. On cross-examination, Byrd admitted that he told the Kahns he could not try the case. Byrd denied that this was an ethical violation and also denied that he had a personal interest in seeing the case settled. Byrd admitted that he thought the oral agreement between the parties was not the final agreement; instead, he thought that the agreement was going to be reduced to writing with all parties having the opportunity to add additional terms.

Frank testified that he was present after Eric's deposition on March 17, 1999. Frank met with his parents and their attorney, Byrd, in Berkley's office. According to Frank, the parties were attempting to figure out why Eric had stated in his deposition testimony that he had made a cash offer of $700,000 when he had never made such an offer. He denied that the parties discussed settlement terms. He said that his mother, Christine, called Eric to see if he wanted to go to dinner and talk; however, the two did not have dinner together that evening. Christine told Frank that Eric did not want to discuss settlement. The next morning, Frank went to the law offices of Hutchinson & Steffen to give his deposition, and at that time he did not intend to discuss settlement of the case because he thought the possibility of settlement was out of the question.

Frank testified that as soon as they arrived, the attorneys convened to discuss the settlement. Frank denied being informed by the attorneys regarding the nature of the discussions that occurred solely between the attorneys. Frank's understanding regarding the recording of the settlement agreement was that it would serve as an outline for a draft of a final written agreement. Frank said that he never heard the terms of the agreement before it was recorded.

Nevertheless, he agreed to the settlement on the record, but he claimed he did so because he felt it was an outline and he would

ultimately have the chance to make corrections to the written agreement. Frank testified that he thought certain things were missing from the agreement, specifically, the overpayment of Eric's salary, the fact that all parties would have to pay their own attorney fees, and Eric's conversion of corporate funds. Frank did not raise these issues when the attorneys asked for comments and additions to the agreement. On cross-examination, Frank stated that he agreed that there was a full mutual release of all claims and that the parties would pay their own attorney fees and that all parties were to cooperate in the tax structure of the deal. Frank said that he objected to his attorney when the case was taken off calendar the day after the settlement.

William testified that he was not a party to the negotiations between the attorneys. Moreover, William stated that he did not participate in discussions between Christine, Frank, and their attorneys concerning the settlement agreement. William admitted that there were general discussions as to what would be put on the record as part of the settlement but that he did not think that the agreement on record constituted a final agreement. According to William, Eric's attorney never stated that the agreement was going to be the final agreement.

Moreover, William testified that several items were left out of the agreement, including Eric's salary, nonpayment of rent, and conversion of corporate funds. William testified that he was present at the settlement meeting where the settlement terms were placed on the record and agreed to the terms on the record. He admitted that he agreed that the parties would eventually release all of their claims. Nevertheless, William believed that the only thing he had agreed to was the purchase price and the sale. He stated that he was concerned about the agreement being placed on the record and that he continued to object throughout the settlement negotiations.

After hearing this testimony, the district court issued its findings of fact and conclusions of law. The district court found that the settlement was discussed and that the parties had arrived at an agreement to settle the case, including any and all claims that each party had or may have had against any other party. The district court determined that the parties, together with counsel, met and memorialized their agreement by verbally stating it to a certified court reporter.

Additionally, the district court found that all of the parties intended the recorded settlement to be a final and binding agreement on the parties and that each of the parties agreed to the terms expressed in that agreement, including the dismissal of any and all claims between the respective parties. The district court noted that

all three of the attorneys had the opportunity to speak on the record and to provide any explanations, supplements, or additions that the attorneys felt would better reflect the agreement of the parties and to express freely any concerns they had with the terms. The district court found that Berkley and Byrd were not interested in the lawsuit.

The district court further found that the record belied William's assertion that he was unaware of the various terms of the agreement and that he had disagreed with the terms of the agreement at the time it was recorded. In addition, the district court found that all the parties knew that further documents would need to be created to effectuate the agreement and that each party agreed to cooperate in executing the necessary documents. The district court also found that the Kahns' actions and conduct prevented the 90-day escrow required by the agreement. The district court concluded that the Kahns were equitably estopped from claiming the statute of frauds as a defense. As a result of these findings of fact and conclusions of law, the district court entered a judgment granting Eric's counter-motion for specific performance of the settlement and ordered that the settlement agreement was a binding and enforceable contract. Neither the Kahns nor Eric appealed this judgment.

Following the judgment, the Kahns sued Byrd and Morse & Mowbray, alleging legal malpractice, breach of fiduciary duty, negligent infliction of emotional distress, and intentional infliction of emotional distress claims. The Kahns claimed that Byrd and his firm had engaged in legal malpractice because (1) Byrd wrongfully abandoned the Kahns shortly before the start of trial, which resulted in Byrd having an interest in the settlement of the lawsuit; (2) Byrd failed to advise the Kahns about the proposed settlement regarding the purchase price of the property and business; (3) Byrd advised the Kahns off the record that $700,000 was a fair price for the business and property; (4) Byrd never advised the Kahns that the agreement would constitute a full settlement of all of the claims against Eric; (5) Byrd failed to state on the record that these claims were not being released; (6) Byrd failed to state on the record that no agreement was final until reduced to writing; (7) Byrd failed to structure the agreement in a way that would be tax beneficial; (8) Byrd had failed to amend the Kahns' answer and counterclaims to include claims against Eric for using $90,000 in corporate funds to pay attorney fees related to the lawsuit; (9) Byrd had failed to amend the Kahns' answer and counterclaims to include claims against Eric relating to unpaid loans; (10) Byrd testified against them at the settlement hearing knowing that he had never properly advised the Kahns; and (11) Byrd failed to add A-1 Equipment Rental, Inc., as a party to the lawsuit.

Morse & Mowbray filed a motion for summary judgment asserting that: (1) the Kahns were collaterally estopped from pursuing their claims because the underlying factual and legal issues had been previously litigated during the two-hour evidentiary hearing in the underlying lawsuit, (2) the Kahns had failed to state a cause of action for negligent infliction of emotional distress as a matter of law, (3) Byrd had filed the counterclaims that the Kahns contended were not alleged, (4) the issue of Byrd's failure to amend the answer to include additional counterclaims was moot because the district court found that any claims that each party had or may have had against any other party were released under the settlement, and (5) the claim of abandonment was also moot because no trial ever took place due to the parties entering into a binding and enforceable settlement agreement.

The district court heard arguments on the motion for summary judgment and subsequently determined that the Kahns were collaterally estopped from raising any claims because all of the claims had been necessarily and actually litigated in the prior litigation. Consequently, the district court entered an order granting summary judgment. The Kahns timely appealed from that order.

Byrd and Morse & Mowbray moved for costs and attorney fees under NRS 18.020 and NRS 18.110, arguing that the complaint was brought without reasonable grounds. Byrd and Morse & Mowbray asked for attorney fees in the amount of $37,341.44 and costs in the amount of $4,871.40. The Kahns filed a motion to retax and settle costs and an opposition to the motion for attorney fees. The district court heard arguments on the matter and determined that Byrd and Morse & Mowbray were entitled to attorney fees in the amount of $37,341. The Kahns timely appealed that decision. The appeals have been consolidated.

## DISCUSSION

### Standard of review

This court reviews an order granting summary judgment de novo.[2] A summary judgment motion should be granted when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[3] A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party."[4] This court "construe[s] the pleadings and

[2]*Yeager v. Harrah's Club, Inc.,* 111 Nev. 830, 833, 897 P.2d 1093, 1094 (1995).

[3]NRCP 56(c); *Pressler v. City of Reno,* 118 Nev. 506, 509, 50 P.3d 1096, 1098 (2002).

[4]*Posadas v. City of Reno,* 109 Nev. 448, 452, 851 P.2d 438, 441-42 (1993).

proof in the light most favorable to the non-moving party."[5] Additionally, when reviewing a motion for summary judgment " 'this court may "be required to determine whether the law has been correctly perceived and applied by the district court." ' "[6] We have previously determined that "[i]ssue preclusion, or collateral estoppel, is a proper basis for granting summary judgment."[7]

## Collateral estoppel

On appeal, the Kahns contend that the district court improperly granted Morse & Mowbray's motion for summary judgment because the prior litigation did not address issues identical to those addressed in the malpractice action. We agree and conclude that most of the issues involved in the malpractice suit were not actually and necessarily litigated in the prior action to resolve the dispute over the settlement agreement.

We note that generally to establish a claim of collateral estoppel or issue preclusion, a litigant must show that an issue of fact or law was necessarily and actually litigated in a prior proceeding.[8] The following three elements must be met to preclude a party from litigating issues previously addressed:

> " '(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation.' "[9]

Significantly, we note that in contrast to claim preclusion, the doctrine of issue preclusion " ' ' "does not apply to matters which could have been litigated but were not." ' ' "[10] However, issue

[5]*LaMantia v. Redisi,* 118 Nev. 27, 29, 38 P.3d 877, 879 (2002) (quoting *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir. 1962)).

[6]*Evans v. Samuels,* 119 Nev. 378, 380, 75 P.3d 361, 363 (2003) (quoting *Calloway v. City of Reno,* 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000) (quoting *Mullis v. Nevada National Bank,* 98 Nev. 510, 512, 654 P.2d 533, 535 (1982))).

[7]*LaForge v. State, University System,* 116 Nev. 415, 419, 997 P.2d 130, 133 (2000) (footnote omitted).

[8]*Id.* at 420, 997 P.2d at 133; *Marine Midland Bank v. Monroe,* 104 Nev. 307, 308, 756 P.2d 1193, 1194 (1988).

[9]*LaForge,* 116 Nev. at 419, 997 P.2d at 133 (quoting *Executive Mgmt. v. Ticor Title Ins. Co.,* 114 Nev. 823, 835, 963 P.2d 465, 473 (1998) (quoting *University of Nevada v. Tarkanian,* 110 Nev. 581, 598, 879 P.2d 1180, 1191 (1994))).

[10]*Id.* at 420, 997 P.2d at 133 (quoting *Executive Mgmt.,* 114 Nev. at 835, 963 P.2d at 473 (quoting *Pomeroy v. Waitkus,* 517 P.2d 396, 399 (Colo. 1974)

preclusion may be appropriate, even when the causes of action asserted in the second proceeding are substantially different from those addressed in the initial proceeding, as long as the court in the prior action addressed and decided the same underlying factual issues.[11] Therefore, when determining whether issue preclusion applies to a given case, courts must scrupulously review the record to determine if it actually stands as a bar to relitigation.[12]

For this reason, we reject the Kahns' contention that collateral estoppel does not apply because the malpractice cause of action had not accrued at the time of the underlying action[13] and therefore any malpractice issues could not have been raised and litigated in the underlying suit. Instead, we conclude that any issues or facts decided in the prior suit are collaterally barred from relitigation, even if a claim of legal malpractice had not accrued. Such a conclusion is consonant with the doctrine of collateral estoppel, which focuses upon the underlying factual bases surrounding issues and not upon claims. However, we emphasize that only those issues actually addressed and litigated are collaterally barred.

Here, the Kahns do not dispute that the previous lawsuit resulted in a final judgment on the merits or that the party against whom judgment is asserted is a party or in privity with a party to the prior litigation.

The Kahns do, however, contend that the district court improperly granted Morse & Mowbray's motion for summary judgment because the factual bases for the legal malpractice claim were not actually and necessarily litigated in the prior lawsuit, and we agree. On appeal, Morse & Mowbray contend that because the district court determined that "there are no other defenses to enforcement of the settlement agreement, and no legal reason for not enforcing the agreement," any issues surrounding the Kahns' claims of legal malpractice were decided in the prior lawsuit. We conclude that this argument is unpersuasive.

First, the Kahns claimed that Byrd committed malpractice because he failed to state on the record that no agreement was final until reduced to writing. This factual issue is problematic because

---

(footnote omitted))); *Tarkanian,* 110 Nev. at 598-600, 879 P.2d at 1191-92 (noting that two species of res judicata exist, issue preclusion and claim preclusion, and that only the latter allows preclusion of claims that could have been litigated in the prior proceeding).

[11]*LaForge,* 116 Nev. at 420, 997 P.2d at 134.

[12]*See id.*

[13]*Hewitt v. Allen,* 118 Nev. 216, 221, 43 P.3d 345, 347-48 (2002) ("As a general rule, a legal malpractice action does not accrue until the plaintiff knows, or should know, all the facts relevant to the foregoing elements and damage has been sustained.").

Byrd testified that he thought the agreement had to be memorialized in writing. Moreover, even if the Kahns understood the scope of the agreement, and all of its terms, it may still have been incumbent upon Byrd to make this statement on the record to protect his clients and allow them to make any necessary changes to the recorded agreement. The court in the prior action did not address the factual bases underlying this malpractice claim, and as a result, these issues are not barred from relitigation under the doctrine of collateral estoppel.

Second, the district court did not address the factual issues underlying the Kahns' assertion that Morse & Mowbray offered them bad advice. Morse & Mowbray contend that the district court addressed this issue because at the evidentiary hearing in the prior action the Kahns' defense to the enforcement of the settlement was that they were never informed as to the scope of the agreement. We disagree.

In the prior action, the district court made no findings concerning Byrd's advice regarding the settlement. In fact, the district court ruled that the attorneys could not discuss the details of private conversations that occurred solely between themselves and their specific clients. Consequently, none of the testimony in the prior action addressed the advice provided to the Kahns during those discussions in any detail. The district court merely determined that the parties agreed to the terms stated on the record. The fact that the Kahns agreed to the terms has nothing to do with the factual issues concerning whether Byrd properly advised them as to those terms.[14] The evidentiary hearing in the prior action simply did not provide a full and fair opportunity to litigate the adequacy of the advice given by Byrd and Morse & Mowbray. Other courts have reached similar conclusions.[15] For these reasons, we con-

---

[14]*Cf. Malfabon v. Garcia,* 111 Nev. 793, 798-99, 898 P.2d 107, 110 (1995) (rejecting notion that client who had signed settlement agreement could not sue attorney for malpractice based on advice that led to settlement).

[15]*See, e.g., Durkin v. Shea & Gould,* 92 F.3d 1510, 1515-16 (9th Cir. 1996) (concluding that prior proceeding on settlement agreement did not provide adequate opportunity to litigate facts underlying malpractice claim based on attorney's advice regarding settlement); *Grayson v. Wofsey, Rosen, Kweskin,* 646 A.2d 195 (Conn. 1994); *Keramati v. Schackow,* 553 So. 2d 741, 744 (Fla. Dist. Ct. App. 1989) (mere acceptance of a settlement in a prior suit does not foreclose a malpractice suit against the attorney who handled the case); *Thomas v. Bethea,* 718 A.2d 1187, 1190-95 (Md. 1998) (attorney malpractice action was not barred on the grounds of nonmutual collateral estoppel because it is unjust to preclude a malpractice action when the clients may have been misinformed as to the actual worth of their case); *Cook v. Connolly,* 366 N.W.2d 287, 290-91 (Minn. 1985) (for collateral estoppel purposes, issues in

clude that the district court improperly granted Morse & Mowbray's motion for summary judgment on these particular issues.[16]

As to the Kahns' remaining theories supporting their claim of legal malpractice, we conclude that they are barred under the doctrine of collateral estoppel. After reviewing the record, we have determined that in the prior litigation the district court necessarily and actually litigated the underlying factual bases supporting the claims based on Byrd's alleged abandonment of the Kahns, Byrd's alleged interest in the settlement of the suit, and Byrd's alleged ethical violations. Additionally, the court addressed the propriety of Byrd testifying against his clients, concluding that Byrd could testify about the conversations he had with the Kahns, Frank, and Berkley together because in those instances the Kahns had specifically waived the attorney-client privilege. Therefore, the underlying factual bases of the Kahns' claims were addressed in the prior litigation.

Moreover, we conclude that because the parties agreed to structure the agreement to be tax beneficial for everyone involved, this issue was litigated below and is barred under the doctrine of collateral estoppel. Moreover, we note that because the Kahns reneged on the agreement before it could be memorialized in writing, there is simply no way to tell if the agreement was structured in such a manner as to harm the Kahns. Lastly, we conclude that any claims that the Kahns might have had concerning malpractice as a result of Byrd's and Morse & Mowbray's failure to amend the complaint to add additional claims lack merit as a matter of law because the district court determined that the Kahns agreed, on the record, to relinquish any and all claims relating to the lawsuit or to the other parties.

*Emotional distress*

The Kahns argue that the district court erred in granting Morse & Mowbray's motion for summary judgment on their claims of in-

client's settlement approval hearing when client was represented by attorney were not the same issues presented in client's claim against attorney for malpractice in advising them to accept an allegedly inadequate settlement); *see also Ryan v. Ford*, 16 S.W.3d 644, 648-49 (Mo. Ct. App. 2000); *Novack v. Newman*, 709 S.W.2d 116, 118-19 (Mo. Ct. App. 1985); *Ayre v. J.D. Bucky Allshouse, P.C.*, 942 S.W.2d 24, 27-28 (Tex. App. 1996).

[16]We also conclude that genuine issues of material fact exist in the instant case. Under Nevada law, to establish a claim of legal malpractice, a plaintiff must demonstrate the following: ''[1] the existence of 'an attorney-client relationship, [2] a duty owed to the client by the attorney, [3] breach of that duty,

tentional infliction of emotional distress and negligent infliction of emotional distress. We disagree. Furthermore, we conclude that a claim for negligent infliction of emotional distress cannot be premised upon an attorney's negligence in a legal malpractice case.

The Kahns failed to allege facts sufficient to support the intentional infliction of emotional distress claim. This court has held that when a plaintiff bases a malpractice claim solely on negligence, without alleging or proving outrageous or extreme conduct, jury instructions as to damages for emotional distress or mental anguish are inappropriate.[17] It follows logically from this reasoning that a plaintiff must show outrageous or extreme conduct to succeed on a claim for intentional infliction of emotional distress arising from a claim of attorney malpractice. In the instant case, the Kahns failed to allege any facts demonstrating that Byrd's or Morse & Mowbray's conduct was extreme or outrageous.[18] Accordingly, the district court properly granted summary judgment in favor of Byrd and Morse & Mowbray on the claim of intentional infliction of emotional distress.

Additionally, we hold that a claim of negligent infliction of emotional distress is inappropriate in the context of a legal malpractice suit when the harm resulted from pecuniary damages, even if the plaintiffs demonstrated physical symptoms. The rationale behind such a rule is that "the primary interest protected in legal malpractice actions is economic and 'serious emotional distress is not an inevitable consequence of the loss of money.' "[19] We agree with this

and [4] the breach [is the actual and] proximate cause of the client's damages.' " *Allyn v. McDonald,* 112 Nev. 68, 72, 910 P.2d 263, 266 (1996) (quoting *Semenza v. Nevada Med. Liability Ins. Co.,* 104 Nev. 666, 667-68, 765 P.2d 184, 185 (1988)). Here, the parties disagree as to whether Byrd adequately advised the Kahns as to several of the terms of the agreement and whether Byrd should have stated on the record that the agreement was not final until reduced to writing. Consequently, summary judgment is inappropriate on these issues.

[17]*Selsnick v. Horton,* 96 Nev. 944, 945-46, 620 P.2d 1256, 1257 (1980) (awarding damages for emotional distress against an attorney in a malpractice action is disallowed absent proof of extreme and outrageous conduct causing anguish or distress).

[18]*See Maduike v. Agency Rent-A-Car,* 114 Nev. 1, 4, 953 P.2d 24, 26 (1998) ("According to the California Book of Approved Jury Instructions ('BAJI') No. 12.74, extreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.' BAJI 12.74 further instructs that 'persons must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind.' ").

[19]*Smith v. Superior Court (Bucher),* 13 Cal. Rptr. 2d 133, 136 (Ct. App. 1992) (quoting *Merenda v. Superior Court,* 4 Cal. Rptr. 2d 87, 91 (Ct. App. 1992)).

rationale. We conclude that it is unjust to allow a claim of negligent infliction of emotional distress when such emotional distress is not a foreseeable consequence of the attorney's general negligence.

We note that several other jurisdictions have adopted similar restrictions. In *Reed v. Mitchell & Timbanard, P.C.,* an Arizona court, which adopted this rule, noted that "[m]ost other jurisdictions which have considered this issue in the context of legal malpractice have held that 'damages for emotional injuries are not recoverable where they are a *consequence* of other damages caused by the attorney's negligence.'"[20] Accordingly, the district court appropriately granted Morse & Mowbray's motion for summary judgment on the Kahns' claim of negligent infliction of emotional distress.

### Attorney fees

The district court found that the Kahns brought their claims without reasonable grounds and awarded attorney fees to Byrd and Morse & Mowbray under NRS 18.010(2)(b). "To support such an award, however, 'there must be evidence in the record supporting the proposition that the complaint was brought without reasonable grounds or to harass the other party.'"[21] The decision to award attorney fees is within the sound discretion of the district court and will not be overturned absent a "manifest abuse of discretion."[22]

Given our decision on appeal, we conclude that the award of attorney fees in this case was premature. The Kahns' claims of legal malpractice, premised upon their allegations of bad advice, are not collaterally barred. Therefore, at this time an award of attorney fees is an abuse of discretion. Accordingly, we reverse the district court's order awarding Morse & Mowbray attorney fees.

### CONCLUSION

We conclude that the district court properly granted summary judgment on the Kahns' emotional distress claims as well as their legal malpractice claims to the extent that those claims are based on issues we have determined were necessarily and actually litigated. We therefore affirm that portion of the district court's order. However, as to those issues that we have determined were not nec-

---

[20]903 P.2d 621, 626 (Ariz. Ct. App. 1995) (quoting 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 6.11, at 904 (3d ed. 1989 & Supp. 1993) (citing cases from numerous jurisdictions)).

[21]*Semenza v. Caughlin Crafted Homes,* 111 Nev. 1089, 1095, 901 P.2d 684, 687 (1995) (quoting *Chowdhry v. NLVH, Inc.,* 109 Nev. 478, 486, 851 P.2d 459, 464 (1993)).

[22]*County of Clark v. Blanchard Constr. Co.,* 98 Nev. 488, 492, 653 P.2d 1217, 1220 (1982).

essarily and actually litigated we conclude that the district court erred in granting summary judgment and reverse that portion of the district court's order.[23] We also conclude that the district court's award of attorney fees under NRS 18.010(2)(b) was an abuse of discretion because some of the Kahns' claims were based upon reasonable grounds. Accordingly, we affirm in part, reverse in part, and remand this case to the district court for further proceedings consistent with this opinion.[24]

HARDESTY, J., concurs.

GIBBONS, J., concurring in part and dissenting in part:

I concur with the majority regarding the affirmance of the order granting summary judgment as to the emotional distress claims. I also concur with the majority that the award of attorney fees under NRS 18.010(2)(b) was improper in that the claims of the appellants William (now deceased) and Christine Kahn and the Kahn Family Trust (the Kahns) were based upon reasonable grounds.

However, I dissent regarding the claims of the Kahns for malpractice. The district court found that there are no other defenses to the enforcement of the settlement agreement and that there was no legal reason for not enforcing the settlement agreement. I agree. The Kahns did not appeal the judgment of the district court granting Eric Kahn's counter-motion for specific performance of the settlement agreement and the finding that the settlement agreement was a binding and enforceable contract. Therefore, there is no genuine issue of material fact that precluded the district court from granting summary judgment under the doctrine of collateral estoppel.

---

[23]We also note that the Kahns failed to challenge the district court's grant of summary judgment as to their claim for breach of fiduciary duty on appeal. Accordingly, we have not addressed that issue.

[24]We have considered the Kahns' contention that the district court's findings of fact and conclusions of law are inadequate, and we conclude that the Kahns waived this issue by failing to raise it. Therefore, we conclude that this issue was not properly raised on appeal. *State of Washington v. Bagley,* 114 Nev. 788, 792, 963 P.2d 498, 501 (1998). Moreover, even if the issue was properly raised on appeal, we conclude that the Kahns' arguments are unpersuasive because they failed to demonstrate that the district court's findings of fact and conclusions of law are clearly erroneous or not supported by ample evidence in the record. NRCP 52. We also reject the Kahns' contentions that Byrd and Morse & Mowbray confessed error on appeal. *See Williams v. State,* 95 Nev. 830, 603 P.2d 694 (1979).