DEBRA SCHLOTFELDT, Appellant/Cross-Respondent, v. CHARTER HOSPITAL OF LAS VEGAS, a Nevada Corporation, Respondent/Cross-Appellant.

No. 25483

January 31, 1996 910 P.2d 271

[Rehearing denied May 8, 1997]

*Hamilton D. Moore*, Las Vegas, for Appellant/Cross-Respondent.

*Hafen, Mayor & Palmer, Ltd.*, Las Vegas, for Respondent/Cross-Appellant.

## OPINION

By the Court, YOUNG, J.:

### FACTS

On Saturday, March 4, 1989, appellant/cross-respondent Debra Schlotfeldt ("Schlotfeldt") presented herself to respondent/cross-appellant Charter Hospital of Las Vegas, a Nevada corporation ("Charter") that specializes in the treatment of alcoholism and drug addiction. Charter personnel observed

that Schlotfeldt was extremely depressed and displayed rapid changes in her emotions. Schlotfeldt admitted at trial that she had abused alcohol and ingested methamphetamine prior to her admission to Charter. Schlotfeldt stated during a psychiatric examination that she gambled out of control when under the influence of drugs, was depressed for over a year and a half, and had thoughts of suicide. In a statement revealing the depth of Schlotfeldt's emotional difficulties, Schlotfeldt told Charter staff that "I don't trust myself," "I feel like I'm going crazy," and "I feel like I am at the end of my rope." After this conversation, Schlotfeldt went home to retrieve personal belongings. Escorted by her husband, Schlotfeldt returned to Charter and signed documents requesting voluntary admission and authorizing such care and treatment as ordered by her attending physician.

A Charter psychiatrist prepared an admitting diagnosis of Schlotfeldt that concluded she suffered from major depression and suicidal ideation. Anil Batra, M.D., also examined Schlotfeldt and diagnosed a major depressive disorder. On Sunday morning, March 5, 1989, Gilles M.K. Desmarais, M.D. ("Desmarais")[1] examined Schlotfeldt. According to Charter, Desmarais was an independent doctor who was not assigned by Charter to Schlotfeldt. Instead, Desmarais attended to Schlotfeldt at the request of a Charter psychiatrist who was busy with other patients. Desmarais' examination revealed that Schlotfeldt had marital problems that led to alcohol abuse, drug use and compulsive gambling. Desmarais concluded that Schlotfeldt was a suicide risk because her severe depression of one and a half years was nearing a pinnacle.

Schlotfeldt argues that she made repeated requests to return home after the morning of March 5, 1989. Charter admits that Schlotfeldt requested to return home, but claims that because she was a suicide risk and her husband was out of town, releasing her at the time was imprudent. Desmarais urged her to stay voluntarily until her husband returned. Eventually, Desmarais allowed Schlotfeldt to leave because the effects of the drugs had worn off, she was no longer a suicide risk, and her husband had returned. Schlotfeldt spent a total of sixty-six hours at Charter.

Eighteen months later, Schlotfeldt filed suit against Charter and Desmarais. Schlotfeldt's initial complaint contained numerous claims for relief. However, all claims except the false imprisonment claim were withdrawn prior to trial. Schlotfeldt claimed she

[1]While Desmarais was a co-defendant in this case, he settled with Schlotfeldt after the jury verdict. For reasons not apparent on the record, however, Desmarais was erroneously designated a respondent and cross-appellant on this court's docket. Accordingly, the clerk of this court shall amend the caption on this court's docket sheet so that it is consistent with the caption appearing on this opinion.

was admitted to Charter against her will and that she requested to leave Charter, but Charter and Desmarais continued to hold her against her will. Charter claimed that Schlotfeldt admitted herself voluntarily and it was obligated to urge her to remain until she was no longer a danger to herself or others. The district court excluded evidence showing Schlotfeldt was hospitalized for her psychiatric condition on multiple occasions after her stay at the Charter facility. Also, the district court found, as a matter of law, that Charter was vicariously liable for the acts of Desmarais. At the conclusion of trial, a jury found Charter and Desmarais liable for false imprisonment and awarded Schlotfeldt $50,000.00 in compensatory damages. After the district court entered a second amended judgment on the jury's verdict, Schlotfeldt and Charter appealed.

## DISCUSSION

### Subsequent hospitalizations

Schlotfeldt was hospitalized six times for her psychiatric condition after her sixty-six-hour stay at Charter. In her argument to the jury, however, Schlotfeldt asserted that she went to Charter because of marital problems. Further, she claimed she did not have any serious psychiatric problems and that Charter was, therefore, unjustified in admitting her for treatment. The hospitalization evidence directly contradicted Schlotfeldt's contentions and was highly probative of whether Charter's decision to detain Schlotfeldt was warranted and justified. If Schlotfeldt had a psychiatric condition that required subsequent hospitalizations, she may have had a similar condition during her stay at Charter. With this evidence, a jury could reasonably find that Charter was justified in detaining Schlotfeldt, thereby precluding a finding of false imprisonment.

The district court found that the evidence of subsequent hospitalizations was of limited probative value, that its probative value was outweighed by its prejudicial effect, and that a substantial delay would occur if it was presented. The district court reasoned that the subsequent hospitalization evidence would improperly color the jury's judgment in considering exactly what occurred when Schlotfeldt was admitted on March 4, 1989. According to the district court, in a false imprisonment case the knowledge of the defendant at the time of the alleged false imprisonment is of crucial importance. Because Charter was not aware of the subsequent hospitalizations at the time of the alleged false imprisonment, the district court excluded the evidence.

NRS 48.035 allows the district court to exclude evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or undue delay. Even if evidence is otherwise admissible, a trial court may exclude the evidence after

striking a proper balance between the probative value of the evidence and its prejudicial dangers. Elsbury v. State, 90 Nev. 50, 53, 518 P.2d 599, 601 (1974). A district court's decision whether to exclude or admit evidence will only be reversed if it is "manifestly wrong." Daly v. State, 99 Nev. 564, 567, 665 P.2d 798, 801 (1983).

By requiring the prejudicial effect of evidence to "substantially outweigh" its probative value, NRS 48.035 implies a favoritism toward admissibility. To merit exclusion, the evidence must *unfairly* prejudice an opponent, typically by challenging the emotional and sympathetic tendencies of a jury, not the jury's intellectual ability to evaluate evidence. Fed. R. Evid. 403 advisory committee's note. Further, a limiting instruction or other alternative method of introduction should be utilized before highly probative evidence is excluded. Maudlin v. Upjohn Co., 697 F.2d 644, 648 (5th Cir. 1983).

In this case, the evidence of subsequent hospitalizations was extremely probative of the ultimate issue—false imprisonment. If Schlotfeldt had psychiatric problems, Charter would be justified in considering her a danger to herself and others. If Schlotfeldt voluntarily admitted herself for psychiatric treatment on later occasions, she may have admitted herself voluntarily on the occasion in question. Charter's reasoning during Schlotfeldt's initial admission and Charter's decision to urge her to stay in its facility would be explained. The intellectual abilities of the jury would not be challenged because the jury could easily understand that Charter was not aware of the subsequent hospitalizations when it admitted Schlotfeldt. Further, a limiting instruction could have directed the jury to consider the subsequent hospitalization records as only corroborating evidence that Schlotfeldt voluntarily admitted herself to Charter and that her condition explained Charter's actions in urging her to stay at its facility.

We conclude that the evidence of Schlotfeldt's subsequent hospitalizations was highly probative of the ultimate issue in this case, and because a jury instruction could have limited the prejudicial effect of the evidence, the district court was manifestly wrong in excluding the hospitalization evidence.

*Agency relationship*

The district court instructed the jury that Charter was vicariously liable, as a matter of law, for the acts of Desmarais.[2] Based

---

[2]The district court instructed the jury as follows:

The law holds an employer responsible for the acts of his employees while acting in the course of their employment. The law also holds a principal liable for the acts of its agent. Therefore, defendant Charter Hospital is legally responsible for the acts and omissions of all its employees and the acts or omissions of defendant Dr. Desmarais.

on the ostensible agency theory, the district court found that Charter should be held liable for the acts of Desmarais because he was chosen by Charter to examine Schlotfeldt. Charter opposed the instruction because it claimed an issue of fact existed as to whether an agency relationship existed between Charter and Desmarais. The district court's instruction, according to Charter, was improper and materially prejudiced its position by binding its liability to the improper acts of Desmarais.

The existence of an agency relationship is generally a question of fact for the jury if the facts showing the existence of agency are disputed, or if conflicting inferences can be drawn from the facts. Latin American Shipping Co. Inc., v. Pan American Trading Corp., 363 So. 2d 578, 579-80 (Fla. Dist. Ct. App. 1978). A question of law exists as to whether sufficient competent evidence is present to require that the agency question be forwarded to a jury. In re Cliquot's Champagne, 70 U.S. 114, 140 (1865); 3 Am. Jur. 2D *Agency* § 362 (1986).

Determining whether an issue of fact exists for a jury to decide is similar to determining whether a genuine issue of fact is present to preclude summary judgment. In Oehler v. Humana, Inc., 105 Nev. 348, 351-52, 775 P.2d 1271, 1273 (1989), this court affirmed a summary judgment order that found, as a matter of law, that agency *did not* exist between a hospital and a doctor. The *Oehler* court stated that "[a] hospital is not vicariously liable for acts of physicians who are neither employees nor agents of the hospital." *Id.* at 351, 775 P.2d at 1273. According to the *Oehler* court, evidence that a doctor rented office space in a building that was controlled by a hospital, and that the hospital may have subsidized rents in the building, was not sufficient to raise a question of fact that the doctor *was* an agent.[3] *Id.*

Medical malpractice cases also serve as a guide for establish-

---

[3]In *Oehler,* this court found that agency *did not* exist as a matter of law. We conclude in this case that whether agency *did* exist cannot be determined as a matter of law. Our conclusion today does not disturb the holding of *Oehler.* These cases are distinguishable because determining the existence of agency is quite different from determining the absence of agency. First, concluding agency exists requires an affirmative finding on all the elements of agency. Concluding agency does not exist requires only the negation of one element of the agency relationship. Second, the legal consequences of concluding that agency exists are much different from concluding the opposite. One defendant's liability can become inextricably linked to the tortious acts of another defendant through a conclusion of agency. On the other hand, refusing to find agency merely requires a plaintiff to prove a case against each defendant independently.

ing the presence of agency between a doctor and hospital and evoking vicarious liability. Those cases have found that absent an employment relationship, a doctor's mere affiliation with a hospital is not sufficient to hold a hospital vicariously liable for the doctor's negligent conduct. Hill v. St. Clare's Hosp., 490 N.E.2d 823, 827 (N.Y. 1986); Ruane v. Niagara Falls Memorial Medical Center, 458 N.E.2d 1253 (N.Y. 1983). A physician or surgeon who is on a hospital's staff is not necessarily an employee of the hospital, and the hospital is not necessarily liable for his tortious acts. Evans v. Bernhard, 533 P.2d 721, 725 (Ariz. Ct. App. 1975). A hospital does not generally expose itself to vicarious liability for a doctor's actions by merely extending staff privileges to that doctor. Moon v. Mercy Hospital, 373 P.2d 944, 946 (Colo. 1962); Hundt v. Proctor Community Hospital, 284 N.E.2d 676, 678 (Ill. App. Ct. 1972). Further, evidence that a doctor maintains a private practice may tend to dispel any claim of an agency relationship between a doctor and a hospital. *Hundt,* 284 N.E.2d at 678.

The evidence admitted in this case on the issue of agency was limited. Desmarais testified that he was not an employee of Charter but had staff privileges. Desmarais also testified that he was covering for another doctor the night Schlotfeldt was admitted to Charter. Charter's administrator stated that Desmarais only had staff privileges at Charter and was covering for another Charter doctor during the period in question. Also, evidence indicated that Desmarais may have maintained an independent practice because he billed Schlotfeldt separately for the services he rendered at Charter. Other than the fact that Desmarais went to Schlotfeldt's room to conduct a medical examination, no evidence was presented to show an employment or agency relationship existed between Charter and Desmarais.

The district court based its determination that Charter and Desmarais were in an agency relationship on the ostensible agency theory. This theory is recognized in medical malpractice cases. *See* Stewart v. Midani, 525 F. Supp. 843 (N.D. Ga. 1981). The ostensible agency theory applies when a patient comes to a hospital and the hospital selects a doctor to serve the patient. The doctor has apparent authority to bind the hospital because a patient may reasonably assume that a doctor selected by the hospital is an agent of the hospital. *Id.* at 847-53. However, even in cases involving ostensible agency, questions of fact exist for the jury. In *Stewart,* the court used the ostensible agency theory to justify the denial of summary judgment because issues of fact

remained for the jury. *Id.* Typical questions of fact for the jury include (1) whether a patient entrusted herself to the hospital, (2) whether the hospital selected the doctor to serve the patient, (3) whether a patient reasonably believed the doctor was an employee or agent of the hospital, and (4) whether the patient was put on notice that a doctor was an independent contractor. *See id.* All these questions existed in the present case. Accordingly, the jury should have considered the factual determinations necessary in concluding whether Charter and Desmarais had an agency relationship.

Charter presented evidence suggesting that no employment relationship existed with Desmarais, that Desmarais merely had staff privileges, and that Desmarais operated a private practice. This evidence was sufficiently competent to raise a question of fact for the jury regarding the existence of agency. Further, the district court's use of the ostensible agency theory to find agency as a matter of law was improper because application of the theory required a determination of numerous issues of fact. Accordingly, the jury should have decided the agency issue. Because Charter was materially prejudiced by having its liability linked to the acts of Desmarais, the district court committed reversible error.

## CONCLUSION

In considering this case, it is not necessary to resolve the issues raised by Schlotfeldt on appeal. The district court erred by excluding essential evidence and concluding as a matter of law that an agency relationship was present. Accordingly, the district court's judgment against Charter is reversed and this matter is remanded for a new trial.

STEFFEN, C. J., concurs.

ROSE, J., concurring in part and dissenting in part:

I agree with the majority that the district court improperly instructed the jury that Charter was vicariously liable, as a matter of law, for the acts of Desmarais. This was a question of fact, and the error mandates a new trial. However, the district court had the discretion, pursuant to NRS 48.035, to exclude evidence that would be unfairly prejudicial, and it properly precluded evidence of subsequent hospitalizations. JUSTICE SHEARING's dissent clearly sets forth my position on this issue.

SHEARING, J., with whom SPRINGER, J., joins, dissenting:

I would affirm the jury's verdict and the district court's judgment in favor of Debra Schlotfeldt.

Involuntary commitment is one of the most dangerous weapons

that a society can employ. Totalitarian governments have used it extensively against their political enemies. Private organizations can use it for financial gain. Because of the inherent potential for misuse of this weapon, it is crucial that the procedural safeguards established by the State be strictly observed.

The Nevada Legislature has set forth the minimum procedural requirements for an involuntary commitment in NRS 433A.115-330. In this case there was no court-ordered admission under NRS 433A.200-330, so presumably the detention of Schlotfeldt was justified by an emergency. Nevada law does provide for an emergency commitment, which does not require court intervention. NRS 433A.160. A physician, or other designated professionals, may certify a "mentally ill person," (as defined in NRS 433A.115) and "set forth in detail the facts and reasons on which the examining person bases his opinions and conclusions." NRS 433A.180. The mental health facility's or hospital's obligation for an emergency admission is set forth as follows:

> **433A.170 Certificate of psychiatrist, psychologist or physician required.** The administrative officer of a facility operated by the division or of any other public or private mental health facility or hospital shall not accept an application for an emergency admission under NRS 433A.150 and 433A.160 unless that application is accompanied by a certificate of a psychiatrist, licensed psychologist or physician stating that he has examined the person alleged to be mentally ill and that he has concluded that as a result of mental illness the person is likely to harm himself or others. . . .

In this case, the hospital made absolutely no attempt to obtain the required certification for Debra Schlotfeldt after she insisted on leaving. The hospital had no legal justification for detaining her. Therefore, the verdict in favor of her claim for false imprisonment was appropriate.

The majority bases its decision to reverse the judgment on the district court's failure to admit evidence of subsequent hospitalizations and the district court's instruction regarding agency. I disagree with the majority's conclusions on both issues, and I submit that they are irrelevant to the case. According to the undisputed evidence, Charter Hospital of Las Vegas wrongfully detained Schlotfeldt and was rightfully held liable for its actions.