RENOWN HEALTH, INC., FKA WASHOE MEDICAL CEN-
TER, INC., APPELLANT, *v.* BETTY VANDERFORD,
INDIVIDUALLY AND AS THE PERSONAL REPRESENTATIVE OF
CHRISTOPHER WALL, A MINOR, RESPONDENT.

No. 51755

July 1, 2010 235 P.3d 614

*Piscevich & Fenner* and *Margo Piscevich*, Reno; *Molof & Vohl*
and *Robert C. Vohl*, Reno, for Appellant.

*John P. Echeverria*, Reno; *Durney & Brennan* and *Peter D.
Durney*, Reno, for Respondent.

*Bradley Drendel & Jeanney* and *Bill Bradley*, Reno, for Amicus
Curiae Nevada Justice Association.

*Lewis & Roca, LLP*, and *Daniel F. Polsenberg* and *Jennifer B.
Anderson*, Las Vegas, for Amicus Curiae Nevada Hospital
Association.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC*, and *D. Lee
Roberts, Jr.*, and *Rosemary Missisian*, Las Vegas, for Amicus
Curiae Catholic Healthcare West.

## OPINION

By the Court, PARRAGUIRRE, C.J.:

In this appeal, we consider whether hospitals owe an absolute nondelegable duty to provide competent medical care to their emergency room patients through independent contractor doctors. Although the parties settled in this matter, appellant Renown Health, Inc., reserved its right to appeal the district court's interlocutory order granting partial summary judgment based on the imposition of a nondelegable duty. A portion of the settlement remains contingent upon this appeal. We conclude that no such absolute duty exists under Nevada law, nor are we at this time will-

ing to judicially create one. Accordingly, we reverse the district court's grant of partial summary judgment insomuch as the district court concluded that hospitals have such a nondelegable duty. We hold that Renown may be liable for patient injuries under the ostensible agency doctrine that we previously recognized in *Schlotfeldt v. Charter Hospital of Las Vegas*, 112 Nev. 42, 910 P.2d 271 (1996).[1]

## FACTS AND PROCEDURAL HISTORY

This appeal arises from the tragic illness of respondent Betty Vanderford's minor son Christopher Wall. After he complained of headaches, nausea, and fever, Vanderford took Christopher to Renown's emergency room on four different occasions. During the first visit, tests were performed and Christopher was discharged and referred to a specialist. On the second visit, he was given a prescription for an antibiotic and again discharged. On the third visit, Christopher was given a prescription for Vicodin and encouraged to continue taking his antibiotic. Different doctors attended to him on each of these visits.

Vanderford took Christopher to Renown's emergency room for a fourth time after she found him unconscious in the bathroom. At that time, he was diagnosed with basilar meningitis and complications including abscesses. As a result of his illness, Christopher suffered permanent, debilitating injuries, including brain damage.

Vanderford sued Renown in her individual capacity and on behalf of Christopher. The district court granted partial summary judgment for Vanderford, finding that Renown owed Christopher an absolute nondelegable duty such that it was liable for the acts of the emergency room doctors, who were independent contractors.

The district court provided four bases to support its conclusion that hospitals owe an absolute nondelegable duty to their emergency room patients. The district court relied on Nevada statutes, the Joint Committee on the Accreditation of Health Organizations (JCAHO) standards, with which Renown complied, public policy, and common law principles found in sections 428 and 429 of the Restatement (Second) of Torts and cases from Alaska and South Carolina to impose an absolute nondelegable duty as a matter of law. The district court distinguished *Oehler v. Humana, Inc.*, 105 Nev. 348, 775 P.2d 1271 (1989), and *Schlotfeldt v. Charter Hospital of Las Vegas*, 112 Nev. 42, 910 P.2d 271 (1996), stating that neither case involved an emergency room patient and an independent contractor doctor. Vanderford and Renown agreed on a set-

---

[1]We do not address whether this case supports a finding of ostensible agency because it involves unresolved questions of fact.

tlement, resolving all issues except the duty issue, on which Renown reserved its right to appeal.

## DISCUSSION

Renown argues that the district court erred by concluding that it had an absolute nondelegable duty to provide competent medical care to its emergency room patients through its independent contractor doctors because no basis for imposing such a duty exists under Nevada law. Renown therefore argues that the district court erred by granting partial summary judgment in this case. We agree. We also discuss the ostensible agency doctrine as applied to emergency room scenarios like the one in this case.

### Standard of review

We review a district court's decision to grant summary judgment and its conclusions regarding questions of law de novo, without deference to the findings of the lower court. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005); *Pressler v. City of Reno*, 118 Nev. 506, 509, 50 P.3d 1096, 1098 (2002).

### The district court erred in imposing an absolute nondelegable duty on Renown

The district court based its decision to impose an absolute nondelegable duty on Renown on Nevada's statutory scheme, the JCAHO standards, public policy, and the common law. However, we conclude that the district court erred in this determination because there is no basis in Nevada law for imposing such a duty.

Generally, hospitals are not vicariously liable for the acts of independent contractor doctors. *Oehler v. Humana, Inc.*, 105 Nev. 348, 351, 775 P.2d 1271, 1273 (1989); *see* Restatement (Second) of Torts § 409 (1965). The imposition of an absolute nondelegable duty is an exception to this general rule. Restatement (Second) of Torts § 409 (1965). An absolute nondelegable duty is essentially a strict liability concept, where, despite delegation of a duty to an independent contractor, the principal remains primarily responsible for improper performance. *See Black's Law Dictionary* 544 (8th ed. 2004). While we have recognized some exceptions to the general rule that hospitals are not vicariously liable for the acts of independent contractor doctors, *see, e.g., Schlotfeldt v. Charter Hosp. of Las Vegas*, 112 Nev. 42, 910 P.2d 271 (1996), there is no legal or policy basis for imposing an absolute nondelegable duty on

Renown, and we decline to adopt one for the reasons set forth below.

First, Nevada's statutory scheme regulating hospital emergency room care does not provide a basis for imposing an absolute non-delegable duty on hospitals. *See* NRS Chapter 439B. The provisions create a scheme under which a hospital is a policy-setter and overseer, and the provisions contemplate the delegation of medical care to qualified professionals. *See, e.g.*, NRS 439B.410. Similarly, the Nevada Administrative Code highlights a hospital's administrative and supervisory role, requiring that hospitals set procedure and ensure that policies and provisions conform to national standards. *See, e.g.*, NAC 449.331, 449.349, 449.3622.

Second, the JCAHO standards, with which Renown complied, do not require an absolute nondelegable duty. Instead, these requirements again emphasize a hospital's role as a policy-setter and administrator. JCAHO, *Accreditations Manual for Hospitals, Emergency Services*, Standards I-V.

Third, we decline to impose an absolute nondelegable duty on hospitals based upon public policy. This court may refuse to decide an issue if it involves policy questions better left to the Legislature. *Nevada Hwy. Patrol v. State, Dep't Mtr. Veh.*, 107 Nev. 547, 550-51, 815 P.2d 608, 610-11 (1991); *see also Niece v. Elmview Group Home*, 929 P.2d 420, 428 (Wash. 1997) (noting that the policy decision to expand the scope of an employer's liability for an employee's intentional acts against a person to whom the employer owes a duty of care "should be left to the legislature"). The Legislature has heavily regulated hospitals and would have codified a nondelegable duty to emergency room patients if the Legislature had intended such a duty to be imposed on hospitals.

Finally, the common law relied upon by the district court and Vanderford does not support the imposition of an absolute nondelegable duty. In *Jackson v. Power*, 743 P.2d 1376 (Alaska 1987), the Alaska Supreme Court imposed a nondelegable duty on hospitals, holding them vicariously liable for a doctor's negligence when a patient visits the emergency room and the hospital assigns a doctor to the patient. *Id.* at 1385. But subsequently, the Alaska Legislature modified this holding, passing a law that allows hospitals to rebut the nondelegable duty by proving it was unreasonable for the patient to assume that the hospital provided care because the patient had notice of the doctor's independent contractor status. Alaska Stat. § 09.65.096 (2008).[2] Further, in *Fletcher v. South*

---

[2]This legislative modification of the *Jackson* holding was recognized in *Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1067 (Alaska 2002).

*Peninsula Hospital*, the Alaska Supreme Court refused to extend the nondelegable duty to operating rooms. 71 P.3d 833, 839 (Alaska 2003).

Here, the district court also relied on caselaw from South Carolina. In *Simmons v. Tuomey Regional Medical Center* (*Simmons I*), 498 S.E.2d 408 (S.C. Ct. App. 1998), a case involving hospitals' duties in the emergency room setting, the South Carolina Court of Appeals reversed a district court grant of summary judgment for a hospital, deciding that public reliance and regulations imposed on hospitals "created an absolute duty for hospitals to provide competent medical care in their emergency rooms." *Id.* at 411. On appeal, the South Carolina Supreme Court modified the absolute nondelegable duty adopted by the court in *Simmons I*. *Simmons v. Tuomey Regional Medical Center* (*Simmons II*), 533 S.E.2d 312, 322 (S.C. 2000). The *Simmons II* court concluded that most jurisdictions hold hospitals liable for the acts of independent contractor doctors under various theories, and this result remains the same, "whether it is through a theory of apparent agency or nondelegable duty." *Id.* at 320. The modified approach of *Simmons II*, called a nonabsolute nondelegable duty, expressly adopted the Restatement (Second) of Torts section 429, which is also· "sometimes described as ostensible agency." *Simmons II*, 533 S.E.2d at 322. Under section 429, the injured patient must show that the hospital held itself out to the public by providing services, that the patient looked to the hospital and not an individual doctor for care, and that a patient in similar circumstances would reasonably have believed that the physician was a hospital employee. *Id.* When the patient can demonstrate genuine issues of material fact exist as to these factors, "summary judgment is not appropriate." *Id.* at 323.

In examining the caselaw cited by the district court and by Vanderford to support an absolute nondelegable duty, we conclude that these cases, while labeling their approaches as a nondelegable duty, actually require the same analysis as our ostensible agency approach in *Schlotfeldt v. Charter Hospital of Las Vegas*, 112 Nev. 42, 910 P.2d 271 (1996). Once a "nondelegable" duty becomes nonabsolute, as described in *Simmons II*, the duty is no longer truly nondelegable. *See Simmons II*, 533 S.E. 2d at 322. As noted above, a nondelegable duty is a strict liability concept. Thus, a "nondelegable" duty that is not absolute veers away from the concept of strict liability, and creates a duty that is not actually nondelegable. A nonabsolute nondelegable duty is much closer to the ostensible agency approach and is not truly a nondelegable duty at all. Based on the above, we conclude that the district court erred by imposing an absolute nondelegable duty on Renown. However,

we still must address the ostensible agency doctrine as a basis for holding hospitals liable for the acts of their independent contractor emergency room doctors.

*Hospitals may be liable for the acts of their independent contractor doctors under the ostensible agency doctrine adopted in Schlotfeldt*

Given our prior holding in *Schlotfeldt v. Charter Hospital of Las Vegas*, where we adopted the ostensible agency doctrine, we conclude that Renown could be held liable under that theory. 112 Nev. 42, 48, 910 P.2d 271, 275 (1996).

In *Schlotfeldt*, we considered the acts of an independent contractor doctor who attended to a patient at a drug and alcohol treatment center. *Id.* at 43-44, 910 P.2d at 272. The independent contractor doctor attended to Schlotfeldt at the request of a Charter Hospital psychiatrist who was busy with other patients. *Id.* Charter did not release Schlotfeldt, despite her requests to return home, because, based on the independent contractor doctor's conclusions, she was a suicide risk and releasing her would be imprudent. *Id.* at 44, 910 P.2d at 272. The patient sued the treatment center for false imprisonment, and the district court instructed the jury that the treatment center was vicariously liable for the doctor's acts because the treatment center chose the doctor to examine Schlotfeldt. *Id.* at 46-47, 910 P.2d 274. Charter opposed such an instruction because the existence of an agency relationship between Charter and the doctor was a question of fact for the jury. *Id.* at 48, 910 P.2d at 275.

We agreed with Charter. *Id.* at 49, 910 P.2d at 275. Consequently, we adopted an approach known as ostensible agency, which applies when a patient goes to the hospital and the hospital selects the doctor to treat the patient, such that it is reasonable for the patient to assume the doctor is an agent of the hospital. *Id.* at 48, 910 P.2d at 275. We identified typical fact questions that arise under ostensible agency, including: (1) whether the patient entrusted herself to the hospital, (2) whether the hospital selected the doctor, (3) whether the patient reasonably believed the doctor was an agent of the hospital, and (4) whether the patient had notice of the doctor's independent contractor status. *Id.* at 49, 910 P.2d at 275. Whether a patient can demonstrate these factors remains a question for the jury. *Id.* at 48-49, 910 P.2d at 275.

Here, we see no compelling reason why *Schlotfeldt* should not apply to substantially similar factual scenarios that involve inde-

pendent contractor emergency room doctors. Like the patient in *Schlotfeldt*, Vanderford and Christopher entrusted themselves to Renown by going to its emergency room. They did not choose a doctor for Christopher, but were subject to the choice by Renown, as is the case in most emergency room scenarios. The remaining two questions, focusing on Vanderford's reasonable beliefs and whether Vanderford had notice, are subject to the jury's fact-finding but present a situation quite similar to the treatment center discussed in *Schlotfeldt*. Public policy supports this decision as well because under an ostensible agency approach, hospitals may be liable for the malpractice of independent contractor emergency room physicians. This theory allows tort victims recovery by demonstrating facts that are often present in an emergency room setting, while not judicially creating an absolute duty on hospitals that is better left to the Legislature to impose.

Moreover, the typical questions of fact discussed in *Schlotfeldt* that make up the ostensible agency inquiry are similar to section 429 of the Restatement (Second) of Torts and the nonabsolute nondelegable duty adopted in *Simmons II*. *See Schlotfeldt*, 112 Nev. at 49, 910 P.2d at 275. The *Simmons II* approach presents an approach no different than the ostensible agency doctrine we articulated in *Schlotfeldt*. Whether it is called a nonabsolute nondelegable duty or ostensible agency, the result remains the same: hospitals may be held liable for the acts of independent contractor emergency room doctors if the hospital selects the doctor and it is reasonable for the patient to assume that the doctor is an agent of the hospital.

## CONCLUSION

For the foregoing reasons, we conclude that hospitals do not have an absolute nondelegable duty to provide nonnegligent medical care to emergency room patients through doctors who are independent contractors. However, we extend the ostensible agency doctrine of *Schlotfeldt* to emergency room scenarios. We therefore conclude that Renown may be held liable for the acts of its independent contractor emergency room doctors under this approach. Because the district court improperly imposed an absolute non-delegable duty on Renown, we reverse the decision of the district court insomuch as it imposed upon Renown a nondelegable duty to provide competent medical care to its emergency room patients through independent contractor doctors.

HARDESTY, DOUGLAS, and PICKERING, JJ., concur.

CHERRY, J., with whom SAITTA and GIBBONS, JJ., agree, dissenting:

I agree with the majority that Nevada law does not currently support the imposition of an absolute nondelegable duty upon hospitals to render competent services to its emergency room patients. I also agree that the ostensible agency doctrine, previously discussed by this court in *Schlotfeldt v. Charter Hospital of Las Vegas*, 112 Nev. 42, 910 P.2d 271 (1996), provides a natural extension to the emergency room scenario contemplated here. However, given the public policy considerations, I would adopt the non-absolute nondelegable duty approach, as the Supreme Court of South Carolina decided in *Simmons v. Tuomey Regional Medical Center (Simmons II)*, 533 S.E.2d 312 (S.C. 2000).

Emergency room patients may base their decisions regarding care largely upon hospital advertising and the reputation of the hospital as an entity. These patients do not seek out individual doctors, but expect the hospital to provide competent emergency room care. Hospitals should not be able to escape liability for the malpractice of independent contractor emergency room doctors when hospitals hold themselves out to the public in this manner. The *Simmons II* approach accounts for this commercialization of medicine and the "public perception of the unity of a hospital and its emergency room." *Id.* at 322.

Further, some emergency room patients may be required to seek treatment at specific hospital emergency rooms due to contracts with their insurance carriers. In creating a contractual relationship with insurance companies, hospitals limit patient choice and assure themselves a certain portion of emergency room business.

For these reasons, I respectfully dissent.