133 Nev., Advance Opinion 115

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| TAWNI MCCROSKY, INDIVIDUALLY AND AS THE NATURAL PARENT OF LYAM MCCROSKY, A MINOR CHILD, Appellant, vs. CARSON TAHOE REGIONAL MEDICAL CENTER, A NEVADA BUSINESS ENTITY, Respondent. | No. 70325  DEC 28 2017 |

Appeal from a district court judgment after jury verdict in a medical malpractice action. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Affirmed in part, reversed in part, and remanded.*

Durney & Brennan, Ltd., and Peter D. Durney and Allasia L. Brennan, Reno,
for Appellant.

Carroll, Kelly, Trotter, Franzen, McKenna & Peabody and John C. Kelly, Robert C. McBride, and Chelsea R. Hueth, Las Vegas,
for Respondent.

Matthew L. Sharp, Ltd., and Matthew L. Sharp, Reno,
for Amicus Curiae Nevada Justice Association.

---

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

This medical malpractice suit requires us to reconsider under what circumstances a hospital can be vicariously liable for the alleged

negligence of a doctor who works at the hospital as an independent contractor. The district court held that the hospital could not be liable, particularly when the doctor independently settled with the plaintiff and when the plaintiff signed forms stating that all doctors at the hospital are independent contractors. We disagree because Nevada law recognizes vicarious liability under these circumstances so long as an ostensible agency relationship existed between the hospital and the doctor. We reverse and remand for a jury to determine whether such an ostensible agency relationship existed under the facts of this case.

## BACKGROUND

In September 2012, Tawni McCrosky learned from her primary family physician that she was pregnant. Her physician advised her to go to the Maternal Obstetrical Management (MOM's) clinic, a prenatal care clinic operated by Carson Tahoe Regional Medical Center (CTRMC). The MOM's clinic is staffed by nurses and physicians who volunteer their time, including Dr. Hayes, the obstetrician who would later deliver McCrosky's child.

Every time McCrosky went to the MOM's clinic, she signed a "Conditions of Admissions (COA)." The COA was a two-page document listing twelve conditions. The sixth condition stated:

> All physicians and surgeons furnishing healthcare services to me/the patient, including the radiologist, pathologist, anesthesiologist, emergency room physicians, hospitalists etc., are independent contractors and are NOT employees or agents of the hospital. **I am advised that I will receive separate bills for these services.** ____ (Initial)

(Emphasis in the original.) This was the only condition on the COA that required the patient's initials. McCrosky initialed in the indicated space

SUPREME COURT
OF
NEVADA

(0) 1947A

and signed her full name at the end of each form. She claims that she has no recollection of reading or signing these forms on five separate occasions. She alleges that they were handed to her without explanation.

On April 2, 2012, McCrosky preregistered with CTRMC to deliver her infant at the hospital. It is standard practice for expecting mothers at the MOM's clinic to preregister with CTRMC within three months of their expected delivery date. When she preregistered, McCrosky signed and initialed a COA identical to the five COAs she had previously signed at the MOM's clinic.

Twenty-two days later, McCrosky went into labor. When she arrived at CTRMC to deliver, Dr. Hayes was the obstetrician on call. Although Dr. Hayes volunteers at the MOM's clinic, she had never met McCrosky, and there is no indication that McCrosky selected Dr. Hayes to deliver her child. McCrosky did not sign a COA at this time.

The delivery did not go as planned. It resulted in McCrosky's child suffering permanent, debilitating injuries. McCrosky sued Dr. Hayes and CTRMC, alleging that they provided negligent care which proximately caused her son's injuries. McCrosky settled with Dr. Hayes prior to trial. In their settlement, McCrosky and Dr. Hayes signed a release which explicitly reserved "[a]ll rights against the hospital predicated upon the actions or omissions of Dr. Hayes."

McCrosky's suit against CTRMC was predicated on two theories. First was that CTRMC was directly negligent in its treatment. A jury rejected this claim after an eleven-day trial.

Second, McCrosky sought to hold CTRMC vicariously liable for Dr. Hayes's alleged negligence. McCrosky concedes that Dr. Hayes is an independent contractor rather than an employee of CTRMC; she is paid

through Carson Medical Group to provide on-call obstetrical service at CTRMC. Nonetheless, McCrosky argues that a reasonable patient in her position would have understood Dr. Hayes to be a CTRMC employee, making Dr. Hayes an ostensible agent of the hospital and exposing it to vicarious liability for Dr. Hayes's conduct.

CTRMC moved for partial summary judgment on the issue of vicarious liability. The district court granted that motion, finding that (1) NRS 41A.045 abrogates vicarious liability for providers of health care, (2) McCrosky's settlement with Dr. Hayes precluded additional recovery from CTRMC for Dr. Hayes's conduct, and (3) as a matter of law, Dr. Hayes was not an ostensible agent of CTRMC.

McCrosky appeals, challenging that order granting partial summary judgment, as well as the jury's finding that CTRMC was not directly negligent.

## DISCUSSION

### The district court erred in granting summary judgment on the issue of vicarious liability

We review a district court's order granting partial summary judgment de novo. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* We view all evidence in a light most favorable to the nonmoving party. *Id.*

#### NRS 41A.045 does not abrogate vicarious liability

The district court found that NRS 41A.045 precludes CTRMC from being vicarious liable for Dr. Hayes's conduct. We disagree. NRS 41A.045(1) provides:

Supreme Court
of
Nevada

(O) 1947A

4

> In an action for injury or death against a provider of health care based upon professional negligence, each defendant is liable to the plaintiff . . . severally only, and not jointly, for that portion of the judgment which represents the percentage of negligence attributable to the defendant.

The purpose of NRS 41A.045(1) is "to abrogate joint and several liability of a provider of health care in an action for injury or death against the provider of health care based upon professional negligence." NRS 41A.045(2). In short, NRS 41A.045 substitutes a joint and several liability scheme—wherein each defendant is liable for all of the damages that joint defendants caused—for a several liability scheme, wherein a plaintiff "can recover only the defendant's share of the injured plaintiff's damages." *Piroozi v. Eighth Judicial Dist. Court*, 131 Nev., Adv. Op. 100, 363 P.3d 1168, 1171 (2015).

Vicarious liability is related to but distinct from the concepts of several liability and joint and several liability. Vicarious liability is "[l]iability that a supervisory party . . . bears for the actionable conduct of a subordinate . . . based on the relationship between the two parties." *Black's Law Dictionary* 1055 (10th ed. 2014). The supervisory party need not be directly at fault to be liable, because the subordinate's negligence is imputed to the supervisor. *See* Restatement (Third) of Torts: Apportionment of Liability § 13 (Am. Law Inst. 2000). Vicarious liability applies "regardless of whether joint and several liability or several liability is the governing rule." *Id.*

Because NRS 41A.045 is silent regarding vicarious liability, it leaves vicarious liability intact. *See, e.g.*, *Wiggs v. City of Phoenix*, 10 P.3d 625, 629 (Ariz. 2000) (holding that a statute abrogating joint liability left intact vicarious liability). An employer can be vicariously liable even in a several liability scheme. *See* Restatement (Third) of Torts: Apportionment

of Liability § 13 (Am. Law Inst. 2000). For example, we may imagine a situation in which Defendants A and B each caused 50% of Patient's damages, and Hospital is vicariously liable for Defendant A's actions, but not for Defendant B's. Under a joint and several liability scheme, each defendant is liable for 100% of Patient's damages. Because Hospital is vicariously liable for Defendant A's share, Hospital would also be liable for 100% of the damages. By contrast, under NRS 41A.045's several liability scheme, each defendant is liable only for the damages he or she caused—here, 50% each. Because Defendant A is liable for 50% of Patient's damages, Hospital is vicariously liable for 50% as well.

In short, vicarious liability survives in the several liability scheme created by NRS 41A.045.

### Settling with Dr. Hayes did not extinguish vicarious liability claims against CTRMC

The district court further held that McCrosky's settlement with Dr. Hayes "removed the basis for any additional recovery from [CTRMC] for Dr. Hayes' conduct. To hold otherwise would result in a double recovery for Plaintiffs . . . ." We disagree.

Under the common law, "the release of one tortfeasor automatically released all other potential tortfeasors." *Russ v. Gen. Motors Corp.*, 111 Nev. 1431, 1435, 906 P.2d 718, 720 (1995) (criticizing the common law rule as "harsh and without any rational basis"). Finding the common law rule unsatisfactory, the Nevada Legislature abrogated that rule with NRS 17.245, which establishes that one tortfeasor's settlement does not release others liable for the same tort unless the settlement so provides. *Id.* at 1437-38, 906 P.2d at 722.

NRS 17.245 applies to situations involving vicarious liability. *Van Cleave v. Gamboni Constr. Co.*, 101 Nev. 524, 529, 706 P.2d 845, 848

(1985). In *Van Cleave*, a plaintiff sued for injuries resulting from an automobile accident in which an employee of the Gamboni Construction Company was the driver who caused the accident. *Id.* at 525, 706 P.2d at 846. The plaintiff and the employee settled and released the employee from liability, but their agreement expressly reserved the plaintiff's claims against other parties. *Id.* We held that "a release of one of two parties liable for Van Cleave's injuries 'does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide.'" *Id.* at 529, 706 P.2d at 849 (quoting NRS 17.245(1)(a)). We went on to hold that the employer remained vicariously liable. *Id.* at 529-30, 706 P.2d at 848.

Like the settlement in *Van Cleave*, McCrosky's settlement with Dr. Hayes expressly reserved all claims against the employer. Thus, under NRS 17.245, her settlement does not extinguish CTRMC's vicarious liability, nor will this determination result in a double recovery for McCrosky. Should McCrosky recover damages from the hospital on a vicarious liability theory, those damages will be reduced by the amount McCrosky already received from Dr. Hayes. *See* NRS 17.245(1)(a).

*An issue of fact existed as to whether Dr. Hayes was an ostensible agent of CTRMC*

As a third basis for granting CTRMC's motion for partial summary judgment, the district court determined that, as a matter of law, no ostensible agency relationship existed between McCrosky and CTRMC.

The general rule of vicarious liability is that an employer is liable for the negligence of its employee but not the negligence of an independent contractor. *See Oehler v. Humana Inc.*, 105 Nev. 348, 351, 775 P.2d 1271, 1273 (1989). However, an exception exists "if the hospital selects the doctor and it is reasonable for the patient to assume that the doctor is

an agent of the hospital." *Renown Health, Inc. v. Vanderford*, 126 Nev. 221, 228, 235 P.3d 614, 618 (2010). In such a scenario, "[t]he doctor has apparent authority to bind the hospital," making the hospital vicariously liable for the doctor's actions under the doctrine of ostensible agency. *Schlotfeldt v. Charter Hosp. of Las Vegas*, 112 Nev. 42, 48, 910 P.2d 271, 275 (1996). Whether an ostensible agency relationship exists "is generally a question of fact for the jury if the facts showing the existence of agency are disputed, or if conflicting inferences can be drawn from the facts." *Id.* at 47, 910 P.2d at 274.

> Typical questions of fact for the jury include (1) whether a patient entrusted herself to the hospital, (2) whether the hospital selected the doctor to serve the patient, (3) whether a patient reasonably believed the doctor was an employee or agent of the hospital, and (4) whether the patient was put on notice that a doctor was an independent contractor.

*Id.* at 49, 910 P.2d at 275.

The district court found that, although questions of fact exist with respect to *some* of the *Schlotfeldt* factors, the COA that McCrosky signed established as a matter of law that Dr. Hayes was an independent contractor. We disagree.

While section 6 of the COA declares that "[a]ll physicians . . . are independent contractors and are NOT employees or agents of the hospital," it is debatable whether a typical patient would understand that statement to mean that the hospital is not liable for a physician's negligence. On the one hand, the COA drew attention to section 6 among the twelve conditions because it alone required a patient's initials alongside it, and it was the only section that contained boldfaced text. On the other hand, section 6 says nothing about liability; it requires patients to

SUPREME COURT
OF
NEVADA

(O) 1947A

8

infer that the hospital is not liable for the negligence of independent contractors.

Moreover, the last line of this section, which is bolded and directly next to the spot where patients initial, states: **"I am advised that I will receive separate bills for these services."** Boldfaced text draws a reader's attention; that is why certain statutes and rules require specific text to be bolded to effectively put the reader on notice. *See, e.g.*, NRS 40.640(5) (requiring disclosed constructional defects to be underlined and bolded to absolve a contractor of liability); RPC 1.5(c) (requiring contingent fee agreements to be in boldface type). The boldfaced text in section 6 highlights the issue of billing rather than liability. A reasonable patient may interpret section 6 to inform her only that she will receive separate bills from the doctor and hospital.[1] She might fail to read or understand the preceding language regarding doctors' status as independent contractors.

We recognize that some of our sister courts have found waivers similar to section 6 to be sufficient, as a matter of law, to dispel an appearance of agency. *See, e.g., Markow v. Rosner*, 208 Cal. Rptr. 3d 363, 368, 372 (Ct. App. 2016); *Brookins v. Mote*, 292 P.3d 347, 356-57 (Mont. 2012). Others have disagreed. *See, e.g., Schroeder v. Nw. Cmty. Hosp.*, 862 N.E.2d 1011, 1015, 1020 (Ill. App. Ct. 2006); *Boren v. Weeks*, 251 S.W.3d 426, 429, 437 (Tenn. 2008). Here in Nevada, *Schlotfeldt* made clear that notice is only one "[t]ypical" factor a factfinder should consider when evaluating ostensible agency. 112 Nev. at 49, 910 P.2d at 275. As the district court recognized, there are issues of fact surrounding the other

---

[1]While separate billing suggests that the physician is an independent contractor, we cannot hold as a matter of law that notice of separate billing is sufficient to dispel an ostensible agency relationship.

SUPREME COURT
OF
NEVADA

(O) 1947A

three *Schlotfeldt* factors. And the most recent occasion on which McCrosky signed a COA was when she preregistered, 22 days before she met Dr. Hayes on the night she delivered. Under these circumstances, the language of the COAs is not so sufficiently clear as to dispel the appearance of agency as a matter of law. *Cf. Westpark Owners' Ass'n v. Eighth Judicial Dist. Court*, 123 Nev. 349, 361 n.37, 167 P.3d 421, 429 n.37 (2007) (holding vague language insufficient to waive liability in a construction defect dispute).

Therefore, because material issues of fact exist as to whether ostensible agency existed, the district court erred in granting summary judgment on this issue.

*The district court erred in allowing CTRMC to introduce evidence of collateral payments made on behalf of McCrosky*

With regard to the trial against CTRMC on the issue of the hospital's alleged negligence, CTRMC moved in limine to introduce evidence that McCrosky received collateral payments from Medicaid, a program funded jointly by the state and federal governments. The district court granted that motion.

Because the jury did not find CTRMC to be negligent, it did not reach the issue of damages. However, this issue will almost certainly arise again at trial, so we take this opportunity to address whether collateral source evidence is admissible to reduce a plaintiff's recovery in a medical malpractice case.

Nevada has adopted a *"per se* rule barring the admission of a collateral source of payment for an injury into evidence for any purpose." *Proctor v. Castelletti*, 112 Nev. 88, 90, 911 P.2d 853, 854 (1996) ("Collateral source evidence . . . greatly increases the likelihood that a jury will reduce a plaintiff's award of damages because it knows the plaintiff is already receiving compensation."). NRS 42.021(1) created an exception to

SUPREME COURT
OF
NEVADA

(O) 1947A

10

that rule in the medical malpractice context, allowing defendants such as CTRMC to introduce evidence of collateral payments that the plaintiff received from third parties. The purpose of this law, according to the summary that was presented to voters in the ballot initiative that enacted it, was to prevent "double-dipping"—that is, the practice of plaintiffs receiving payments from both health care providers *and* collateral sources for the same damages. Secretary of State, Statewide Ballot Questions 16 (2004), https://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/2004.pdf. To protect plaintiffs from having their awards overly diminished, however, the second half of the enacted statute—NRS 42.021(2)—prohibits collateral sources from also recovering directly from plaintiffs.

Federal law complicates matters. 42 U.S.C. § 2651(a) provides that when the United States is required to pay for medical treatment on behalf of an individual, and the hospital becomes liable in tort to that individual, "the United States shall have a right to recover . . . the reasonable value of the care and treatment so furnished," and the United States' right to payment is subrogated to the individual's claim against the hospital. In short, § 2651(a) allows the United States to recover from a plaintiff who prevails in a medical malpractice suit the Medicaid payments the plaintiff received—exactly what NRS 42.021(2) prohibits. When state and federal law directly conflict, federal law governs. *See* U.S. Const. art. VI, cl. 2; *Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 123 Nev. 362, 370-71, 168 P.3d 73, 79-80 (2007). Therefore, federal law

preempts NRS 42.021(2) from preventing recovery of federal collateral source payments, such as Medicaid payments.[2]

Because of this preemption, the issue becomes whether NRS 42.021(1) is severable from NRS 42.021(2), such that we may strike the latter while leaving the former intact. *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 515, 217 P.3d 546, 555 (2009) ("[I]t is the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions." (internal quotation marks omitted)). We may not do so if the two sections are "inextricably intertwined," whereby enforcing section 1 without section 2 would "create unintended consequences and frustrate the very object of the act." *Finger v. State*, 117 Nev. 548, 575-76, 27 P.3d 66, 84 (2001). Reading NRS 42.021 as a whole, section 1 benefits defendants by discouraging juries from awarding damages for medical costs that a plaintiff did not actually incur, but section 2 protects plaintiffs by prohibiting collateral sources from recovering against prevailing plaintiffs. Leaving NRS 42.021(1) intact while applying 42 U.S.C. § 2651(a) would doubly reduce a plaintiff's recovery in a medical malpractice suit: first, by likely reducing the amount that juries award to the plaintiff, *see Proctor*, 112 Nev. at 90, 911 P.2d at 854, and second, by allowing the United States to recover Medicaid payments to the plaintiff, 42 U.S.C. § 2651(a). There is no evidence that NRS 42.021 was intended to effectuate a *double* reduction in a plaintiff's recovery. Therefore, because severing NRS 42.021(2) from the statute would result in the "unintended consequence[]" of doubly reducing

---

[2]We note, however, that NRS 42.021 remains intact with respect to state or private collateral source payments.

plaintiffs' recoveries, we must strike the statute in its entirety as applied to federal collateral source payments. *See Finger*, 117 Nev. at 575-76, 27 P.3d at 84.

Absent application of NRS 42.021 to federal collateral source payments, we revert to the *per se* rule in Nevada that collateral source payments may not be admitted into evidence. *See Proctor*, 112 Nev. at 90, 911 P.2d at 854. Thus, on remand, CTRMC may not introduce evidence of Medicaid payments made on behalf of McCrosky.

*McCrosky's remaining claims of error are without merit*

McCrosky's remaining claims of error relate to her trial against CTRMC for directly providing negligent care. First, she claims that the district court erred in putting Dr. Hayes's name on the jury form when Dr. Hayes had previously settled and was therefore not a defendant in the case against CTRMC. We find no error with the district court's decision, which was squarely in line with our decision in *Piroozi*, 131 Nev., Adv. Op. 100, 363 P.3d at 1172.[3] Second, McCrosky challenges the jury's verdict as being contrary to the evidence. After a careful review of the record, we do not find the jury's verdict to be "manifestly and palpably contrary to the evidence." *Price v. Sinnott*, 85 Nev. 600, 608, 460 P.2d 837, 842 (1969) (reviewing whether a verdict was contrary to the evidence when no motion for a

---

[3]We decline to overrule *Piroozi* because McCrosky has failed to present "compelling reasons for so doing." *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008).

directed verdict was made). Thus, we affirm the judgment on the jury's verdict as to CTRMC's alleged negligence.

## CONCLUSION

For the reasons set forth above, we reverse the district court's order granting summary judgment on the issue of vicarious liability and remand for further proceedings because factual issues remain as to whether CTRMC is vicariously liable under the theory of ostensible agency. On remand, CTRMC may not introduce evidence of Medicaid payments made on behalf of McCrosky because NRS 42.021 is preempted by federal law. We affirm the jury's verdict regarding CTRMC's direct negligence.

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre